## V. W. BALDWIN AND OTHERS v. RICHARDSON & CO. AND ANOTHER.

1. One partner of a firm which held real estate made a conveyance ·of it in trust to secure the payment of a loan to the firm, and in making the conveyance used and signed the firm name. The conveyance was proved for record by a subscribing witness, who made oath that he "saw R. & Co. sign the same;" and thereupon it was admitted to record. After a sale under the conveyance in trust, the land was attached by another creditor. *Held*, that the conveyance was valid as an equitable assignment of the entire partnership interest in the property; that as such it was an instrument which by our statute might be recorded, so as to impart constructive notice; that the proof for registration was sufficient, and the registration itself valid; and that the conveyance was therefore admissible in evidence against the attaching creditor and in behalf of an intervenor in the attachment suit, deriving title under the sale made by the trustee. (There was evidence that the other partner knew and approved the execution of the deed of trust; but this, it seems, gave no greater effect to the instrument.)

2. Though at common law a deed to partnership real estate, if made by one partner only, would not bind the other partners, yet their consent or ratification, even by parol, would create an equity enforcible against them.

3. It is now well established that real estate may be bought and sold by a firm, and be held by a firm as part of their stock in trade, in like manner as their personal assets; and therefore the acts or contracts of one of the partners, with respect to the partnership realty and within the scope of the partnership business, are valid in equity and binding upon all the partners, even though the legal title be not affected thereby.

4. Partnership real estate is chargeable with partnership debts, whether such debts be contracted with special reference to the realty or with reference simply to the general assets of the firm; and one· partner, acting for the firm, is competent to make an equitable assignment of the partnership realty, to secure either past or future firm indebtedness.

5. After one partner, acting for the firm and in its name, has made an equitable assignment of the firm real estate, the legal title is held by the firm in trust for the assignee; and he can enforce the trust against the firm, and against all persons claiming under the firm, with either actual or constructive notice of the trust.

6. Chief Justice Morrill dissents from the foregoing rulings on grounds expounded in his opinion and predicated upon our statutes of frauds and registration

APPEAL from Nueces.   Tried below before the Hon. J. B. Hurd.

The material facts of the case are briefly but clearly stated in the opinion of the court.

William Headen, one of the appellees, intervened in the suit, and claimed the land under title derived through the deed of trust executed by Richardson & Co. to N. O. Vineyard as trustee for J. W. Vineyard.   The court below excluded this deed when first offered in evidence for the reason that the affidavit of the subscribing witness did not show by what particular person the deed was signed with the firm name of "Richardson & Co."   The intervenor then called the same subscribing witness, who testified that the deed was signed by Richardson, and on this proof the deed was admitted over the further objection that as it was signed with the firm name it was a nullity.   The plaintiffs excepted.

No personal service was obtained upon Richardson, nor did he make any appearance in the case.   The jury found that the plaintiffs were entitled to their debt and interest from the defendants, Richardson & Co., but that the land attached was the property of Vineyard, when the writ of attachment was executed on it, and afterwards became the property of the intervenor, Headen.

The court thereupon rendered a general judgment for the plaintiffs against Moore, the other partner of Richardson & Co., with execution against the partnership property or Moore's property; but dissolved the attachment and adjudged the land to Headen, the intervenor.

Baldwin & Co., the plaintiffs, asked a new trial, but it was refused and they appealed.

*W. Merriman*, for the appellants.—Three propositions are assumed as unquestionable, viz.: That the property being real estate, vested when purchased by the firm, in the individual members as joint owners (Pasch. Dig., 3429); that one partner, even, cannot convey more than his own interest; that real estate can only be conveyed in the mode pointed out by statute, as in Paschal's Dig., art. 997, which says: "No estate or inheritance shall be conveyed from one to another, unless the conveyance be in writing," etc.

The instrument called a deed of trust is only so much blank paper, in a legal sense; it is not signed, nor does it purport to be a deed, executed by the owners, or either of them, or any one authorized by them, and to try to manufacture a conveyance out of it is seeking to show the execution of an instrument which does not purport to be, and was not executed.

If the paper shows anything it is that it is a nullity as a conveyance.

"Richardson & Co., as a firm, were not the owners, nor does the paper show who makes it, or that any person executes it.

It is then void, and should not have been allowed for any purpose, and the admitting proof, on the trial, of its execution by parol, was allowing a party to make a deed by parol, in violation of the statute, and at variance with their pleadings. Intervenor's claim is based entirely on the so-called deed of trust.

In the case of Castro v. Illies, 13 Tex. R., 233, the court says that "they had to see that the land had, by writing, etc.," passed from one to the other. This did not take place, "because the agreement was only by parol."

The court below, in the very face of its own ruling, "that the so-called trust deed was inadmissible as a recorded instrument," instructs the jury "that the recording of the deed of trust from Richardson & Co. to N. O. Vineyard, was sufficient for all purposes, except that it could not be admitted in evidence without be-

ing proved." Thus telling the jury that it was constructive notice. A paper not permitted or required by law to be recorded is not constructive notice ; this is settled by repeated decisions ; see particularly Burnham vs. Chandler, 15 Tex. R., 441.

The first part of the charge of the court, that possession is sufficient *prima facie* evidence of legal ownership, was simply directing the jury that Vineyard had possession, and of course *prima facie* the owner, and that with no evidence in its support, thus begging the whole question. A similar instruction was set aside as erroneous when there was some evidence of the fact, in the case of Plummer v. Robertson, 6 Serg. & Rawles. 179, and quoted in note of Dart's Vendor and Purchaser, page 403, where the court says : " Possession was a circumstance for the jury, but was not *ipso facto* a legal proposition." See also Blackenship v. Douglas, 26 Tex. R., " possession is not equivalent to registration."

The other portions of the instructions were also wholly unauthorized by the facts proven. If the instructions asked for by the plaintiffs (and refused) had been given, the jury might have received the matter inteligibly. There was no evidence of actual or constructive notice before the levy of the attachment—not the slightest ; no possession of the property by Vineyard, at any time, shown ; and, although the firm of Headen & Moore occupied it for a time, no tenancy, privity or connection between them and Vineyard was shown.

The appellee seems to attach importance to the fact that at the time the sheriff was attaching the property, he was told that it was Vineyard's, *which* Vineyard does not appear. This was no information given to appellants or attorney. Notice to attaching officer is no notice to creditors. (See Dart, Vendor and Purchaser, page 403 ; case of Stanley v. Perry, 5 Greenleaf Rep., 369, and Coffin v. Ray, 1 Met. Rep., 212, quoted in note.) Even if it had been said to appellants at the time, and in a proper manner, it would have been too late. (See case of Stewart v. Messner, 13

N. Hampshire Rep., 46, quoted in note of 4 Kent Com., page 180.)

The occupation of Headen & Moore would only at the most be notice of their own claim, and they have shown none. (Mitthrope v. Collyer, 203 ; 7 Kinnie, Law Compendium, 254.) If we were to presume anything, it would be that one of the firm of Headen & Moore, being the son of one of the defendants, John M. Moore, and the latter frequenting the place they were occupying for the defendants, Richardson & Moore; again, if tenacy, which the court talked of, had been shown it would not be constructive notice of a lessor's title. (Dart. Vend. and Purchaser, 410; Sug. Vendors, 1057.) It is well settled that any information to operate as notice in these cases must be of a positive and direct character, given by a person shown to have full knowledge as well as an interest, and the notice must disclose the nature of the adverse claim. (See Wethered v. Boone, 17 Tex., 477 ; Story Eq. Jur., § 400 and note 2 ; Ponton v. Ballard, 24 Tex. ; Wildgoose v. Wayhand Gould, 147.)

In the case of Miller v. Creshmare, 5 Watts's & Seargeants' Rep., 284., quoted in 3 Kinnie's Law Compendium, 437, it is said : " Vague information by one not interested in the land is not notice to a purchaser that another claims."

Suppose notice had been given of Vineyard's claim, it would only have referred to a void title, if any ; and as stated in the case of Wilson v. Williams, 25 Tex., 54, a void title would rebut the presumption of notice. (Also, Berry v. Donley, 26 Tex.) The time and manner in which a creditor's lien holds as against an unregistered deed is fully reviewed and settled in the case of Ayres v. Duprey, 27 Texas, which is the date of the levy of the attachment.

*Ballinger, Jack & Mott,* for the appellees.—This trust deed denounced as a nullity in the plaintiff's brief; but the particular

grounds rendering it so, much less any authorities for the assertion, he does not favor us with.

The validity and effect of the conveyance by one partner in the partnership name, of land owned by the partnership, and held and used for partnership purposes, with the assent thereto, prior or subsequent, of the other partner, is well settled. (Lowery v. Drew, 18 Tex., 786; Story's Partnership, § 119, 121, 122 and notes; Story's Eq. Jur., § 674.)

If the exception be to the particular form of the trust deed, it would seem to be entirely sufficient to say that if the name of Richardson & Co. was good to receive a title, it must be equally good to convey a title. If this renders a deed a nullity, then Richardson & Co. had no title or right subject to attachment, and the appellant has no ground of action upon his attachment or of appeal from the judgment of the court.

The plaintiff alone sues Moore—does not serve process on Richardson, who is not before the court—and the entire assumption on which the case proceeds is that the deed to Richardson & Co. vested a partnership interest in Moore; otherwise his attachment would fall to the ground.

And we repeat that conveyance by Richardson & Co. must be equally effective with conveyance to Richardson & Co.

Even in those States where a deed is a sealed instrument; and in actions at law, a deed to a person or class of persons, by description or designation, which will render him or them definite and certain, will be good and effective.

Thus, in an action at law, on a bond to "Widow Moller & Son," she being dead, her two sons, on proof of partnership, and that they were meant to be designated, were entitled to recover. (Moller & Moller v. Lantere, 2 Campb., 548.)

Deed to Peter Hoffman & Son, a mercantile firm, the son will take under the deed. (Hoffman v. Porter, 2 Brackenborough, 158.)

Deed to the heirs of A. B., deceased. (Boone v. Boone, 14 Missouri, 20; Shaw v. Loud, 12 Mass., 449.)

To the children of Nancy Jones. (Hogg and wife v. Oden, Dudley S. C. R., 185.)

To the grantor's grandchildren, by his daughter Catharine. (4 Dessaus, 268.)

To the wife of B.; although the person passing for his wife was never lawfully married.

To the Lady Superior of the Congregational Nunnery of Montreal. (3 Barbour's Chy. R., 380.)

In Morse & Houghton v. Carpenter, 19 Vermont, 613, a mortgage was executed to Morse & Hougton on which they brought ejectment. The court say : " A grantee may be described without even the mention of christian or surname, as by his name of office or dignity, or by the party's relation to some other person, as if called the wife or eldest son of J. B. All these descriptions are sufficient on the ground that '*id certum est quod certum reddi potest*.' "

The above is the rule, even at law, and it still more liberally and strongly prevails in equity. (Story, Eq. Jur., § 674.)

Says Story on Partnership, § 82, speaking of the action of a court of equity: " Real estate, held for general partnership purposes, has attributed to it the common qualities of partnership property, in whosesoever name the title may stand in law."

These are the doctrines which courts of law and equity have adopted in those States where the strictness of the common law prevails, and where a technical deed, a sealed instrument, was necessary to convey land, and to authorize its conveyance.

Referring to a few of the cases: In Gram v. Seton, 1 Hall's N. Y. R., 262, cited and approved by Judge Story in his treatise on Partnership, § 122, note 2 : " The previous authority or permission of one partner to another to seal for him, or his subse-

quent adoption of the seal as his own, will impart efficiency to the deed."

Cady v. Shepherd, 11 Pick., 400, was a suit on a sealed contract purporting to be made and signed by "James Shepherd & Co.," against Shepherd and his partner, Robbins. The court say: "A partner may bind his copartner, by a contract under seal, made in the name and for the use of the firm, in the course of the partnership business, provided the copartner assents previously to its execution, or afterwards adopts or ratifies it, and this assent or adoption may be by parol."

Pike v. Bacon, 21 Maine, 280. Assignment under seal for benefit of creditors, signed "P. & B. C.," one signature and seal. The court say, "It is well settled that an instrument executed by one of a copartnership, in the name of the firm, and one seal only affixed, and this by the consent of the other ; or if there be a subsequent ratification, which may be proved by parol, it is sufficient to bind the firm."

Dean v. Nutting, Washburne's Vermont Digest, p. 556. A mortgage given and signed in the firm name of A. B. & Co., by an individual partner, held good to convey the interest of the firm and to sustain ejectment.

Citations might be multiplied indefinitely, to show the rule, both at law and in equity, but these are deemed conclusive.

The rule at law is that signatures in the firm name bind not only the partner signing, but the other partner or partners assenting previously or ratifying subsequently, either of which may have been by parol.

The rule in equity goes further, and where the property is partnership property held and intended for use for partnership purposes, then it is personalty and may be conveyed in the partnership name by one partner just as any other kind of partnership property, this authority being derived from their relations as partners.

The case could not well be stronger to demonstrate the intention to impress upon this property the exclusive character of partnership property, for the use and control of the firm, or to demonstrate assent of both partners.

Its conveyance was to Richardson & Co., not to either partner by his full name, but to the firm in its firm name. The firm then make improvements upon it, occupy it for partnership purposes, borrow five thousand dollars, gold, and a trust deed is given reciting their purchase and deed, and occupancy and use of the property as a firm, and conveying the property for the security of the loan. And the proof shows the express assent of the other partner.

This conveyance would be good in a court of law in a common law State on proof of assent. It would be good in equity on the facts as to the nature of the property and the purposes of the conveyance, and would be enforced against the parties. But in this State the technical reasoning which alone embarrassed the question at common law has no application. A sealed deed is not necessary to convey lands, and the distinction between sealed and unsealed writings is abolished. "It is the technical rule of the common law applicable to deeds which has been engrafted into the commercial system of the law of partnership," says Ch. J. Jones in the leading case of Gram v. Seton (1 Hall, 262) before cited.

The following language of the Supreme Court of the United States in a recent case (Miles v. Caldwell, 2 Wallace, 43) is still more applicable to Texas: "While some of our older States still uphold many of the safeguards of the common law, with its complicated system of conveyancing operating as a strong drag upon the facility and frequency of transfers of real property, our western people traffic in land as they do in horses or merchandize, and sell a quarter section of land as readily and easily as they do a mule or a wagon. The laws of the people correspond with their habits."

Second—As to notice to plaintiff.

The deed having been shown to have been valid, the act and deed of the partners, it was properly recorded in conformity with the registry laws, and was notice to all the world. ·

The judge required proof *aliunde*, in order to ascertain the effect and operation of the deed; but that proof showed it to be the deed of the firm.

The record was proper and unexceptionable.

The oath of the subscribing witness before the recorder was legally exact under the law and facts of the case, that the execution of the deed which he witnessed was an execution by Richardson & Co.

If the record was good only as to the party who actually signed, the deed would still operate notice of its contents.

Thus, in Shaw v. Poor, 6 Pick., 86, deed made by two parties, acknowledged by only one and recorded, held notice of conveyance as to both.

So in Pike v. Bacon, 21 Maine, 280, deed signed " P. & B. C." to one seal, and apparently only by one person, yet the witness proving signature by P. & B. C., record was good as to both. But in this case Headen & Moore were in actual possession of the premises, at the time of the attachment and levy, asserting and evidently holding under the title of Vineyard, and so notifying the officer when he levied.

This fully affected the creditors with notice.

Our Supreme Court say: " It is well settled in this country and in England, that the notice of title given by possession is equivalent to the constructive notice afforded by registration of the deed.

" It is not to be presumed that any man who wishes to purchase land, honestly will buy without knowing what are the claims of a person who is in the open possession of it." (Watkins v. Edwards, 23 Tex., 448-9.)

LINDSAY J.—At the suit of the appellants an attachment issued and was levied upon real estate, as the property of John M. Moore and J. A. Richardson, constituting a mercantile firm under the name and style of "Richardson & Co." The appellee intervened in the cause, and claimed the property by purchase from J. W. Vineyard, whom he alleged to have been the owner of the property at the time of the levy of the attachment. The firm of "Richardson & Co." was indebted to the appellants by note, in the suit for the recovery of the amount of which the attachment was sued out.

In regard to the proceedings on this attachment, the record presents about this state of facts: On the trial the intervenor, to manifest his title to the property attached, introduced a deed bearing date October 11, 1860, from John Low to "Richardson & Co.," duly proven and admitted to record on the fifteenth of January, 1861. He then offered in evidence a deed of trust from "Richardson & Co." to N. Owen Vineyard, bearing date the twenty-fourth of July, 1863, and admitted to record upon the affidavit of one of the subscribing witnesses on the day of its date, and which was admitted to go to the jury by the court only upon the condition of the reiterated sworn statement of that witness before the jury; which statement was accordingly made, with the addition that he saw J. A. Richardson, of the firm of "Richardson & Co.," sign the deed, which he had been called upon to attest, and did attest; and that J. A. Richardson and John M. Moore were then partners, trading and doing business together as a firm, under the style of "Richardson & Co." The sheriff stated, that when he levied the attachment, on the ninth of June, 1866, the appellee and one J. H. Moore were in possession of the property, carrying on business together as partners, and that the appellee then told him he could not levy on it because it was the property of J. W. Vineyard. Another witness proved that John M. Moore, the other partner of the firm of "Richardson & Co.," knew and

approved of the making of the deed of trust by J. A. Richardson, and that it was executed to secure the repayment of a loan to the firm of $5000 by J. W. Vineyard; that he also knew of the sale under the trust deed. The deed made by the trustee to the purchaser, at the sale under the trust deed, was introduced, bearing date the fourth of March, 1865, which had been duly acknowledged by the trustee on the thirteenth of March of the same year, and recorded in the proper office. A deed from J. W. Vineyard, the purchaser and the beneficiary under the trust, was introduced, dated the third day of January, 1867, in which he conveys the property to the appellee, the intervenor in the cause.

The only real and important question to be determined in this controversy is the admissibility, as evidence, of the trust deed executed in the name of " Richardson & Co.," to secure the repayment of the loan of $5000 to the firm by J. W. Vineyard. Whilst it is readily conceded that a deed, executed by one partner in the name of the firm, is not, by the common law, a valid deed to bind the other partners, yet the execution of such a deed by the previous consent, or subsequent ratification of it, by the other partners, even in parol, may create an equity which no court of equity, whose business it is to dispense justice, will hesitate or cavil for one moment about enforcing. In this case the land attempted to be conveyed by one partner, in the name of the firm, was partnership property. This is made manifest, both by the deed of conveyance of the land to the firm, in the firm name, as well as by other positive proof on the trial. It made a part of the stock in trade of the partnership, and one partner could as well make contracts about it as another, just as well as he might about any personalty belonging to the partnership. It is too late now to question the well established doctrine, that real estate may be bought and sold by a firm, and held for partnership purposes, and as a part of the stock in trade. In short it is absolutely treated as personal estate. If it be thus considered as partnership funds,

it is the subject of contract, as other partnership funds, whatever may be the forms of law required for perfecting the *legal* estate in its alienation. If there be a defect in the forms observed in its alienation, the firm, in its action as a firm, by its writing obligatory at least, passes the equity whenever the assent of all the members of the firm has been given, whether verbally or in writing, antecedently or subsequently, to the contract for its disposition. It is subject to the same equitable rights and *liens* of partners and of creditors as the personal estate of the firm, and in equity passes to the personal representatives, rather than to the heirs, upon the death of the partners.

Real estate belonging to the partnership being treated as personalty, and each partner, by the common law view of the relation as well as by the consideration of the community of rights and of interest in the funds and effects, possessing the power to sell, pledge and dispose of all the personal effects of the partnership, his acts· are as valid and binding in equity in reference to creditors and other partners as well in relation to the realty as to the personalty, if such acts are done for purposes within the scope of the partnership. In such cases, the contracts in relation to the realty are obviously good for the interest of the partner contracting, and as the accredited representative of the firm, it is good as the act of the agent of the other members of the firm. This, however, is to be understood of partnership property ; and the act or contract must be within the scope of the business of the partnership. When this is the nature and character of the transaction, it creates an equity in the person who trusts the acting partner in the negotiation. The real estate is chargeable in equity with the partnership debts, whether those debts be made by contracts having direct reference to the specific real estate of the firm, or simply to the general stock, funds or effects of the partnership. In the language of Chancellor Kent, "each partner, in ordinary cases, in the absence of fraud on the part of the purchaser, has the com-

plete *jus disponendi* of the whole partnership interests, and is considered as the authorized agent of the firm." Whatever may have been the limitations upon the powers and rights of partners over the partnership property by the Roman or civil law, the common law, which is the rule of decision to control this court, when not altered by statute, imposes no such restrictions as will impede all facility in the transaction of commercial business, and which may operate most inconvenienly to the public. It is true that the civil law imposed a restriction upon each partner about contracting debts to bind all the partners, or to dispose of more than his share of the partnership property, unless a special authority was so delegated in the terms of the partnership. But no such rule obtains in the common law, in which each partner is the general agent in the administration of the partnership. It seems right that it should be so, because the relation is based and established upon the mutual confidence and trust of the several members of the firm, and the public deals with them in reliance upon such mutual trust and confidence. · If this be the power of each partner over the partnership effects, and real property may constitute a part of those effects, then one partner may make an assignment in equity of the realty, either to secure an antecedent debt or to provide for debts thereafter to be contracted on account of the firm.

Although the instrument of writing executed by one member of the firm of "Richardson & Co.," as a security for the $5000 borrowed for the use of the firm, did not, according to the rule of the common law, (and it is by that law this case must be decided,) pass the legal title, it created an equity against the firm, who then held the legal estate in trust for the lender of the money, and which the lender could unquestionably enforce against them, and all persons deriving title from them, having notice of the trust. It was, to all intents and purposes, an equitable *lien* upon the property, and neither creditors, nor subsequent purchasers, with notice, could successfully controvert or defeat it.

It being, therefore, clear that this writing, in the firm name, by one of the partners, created a trust in favor of the creditor, the lender of the money, it remains to be considered whether the attaching creditor had such notice, actual or constructive, as will defeat his right to subject the property to his demand.

The instrument of writing purporting to be a deed of trust, executed by one of the partners in the name of the firm, was proved before the recorder by one of the subscribing witnesses thereto, and was duly and regularly recorded. By the statutes of registration all bargains, sales, deeds, conveyances, *liens*, legal or equitable, bills of sale and other instruments of writing, may be recorded in the clerk's office of the county court of the proper county. The registration of any equitable title is constructive notice to all creditors and subsequent purchasers, provided it be of such an instrument as is authorized by law to be registered; and by the registry act of this State almost every conceivable character of written instrument, which embraces a contract, or confers a right, legal or equitable, is authorized to be recorded, upon proof by subscribing witnesses or acknowledgment by the maker.

This deed, then, of "Richardson & Co.," passing, as it did, an equity to J. W. Vineyard, and creating a *lien* for the repayment of the money borrowed for the benefit of the firm, being *prior in time was prior in right* to that of the attaching creditor. As the evidence of the equity, of which the appellants had constructive notice, it was a legal instrument of proof, under the system of judicial proceeding in this State, for the establishment of the prior *lien* of the vendor of the intervenor in this cause. The judgment of the court below is therefore affirmed.

Affirmed.

MORRILL, C. J.—The requisites of an instrument for the conveyance of an estate of inheritance or freehold, or for a term of more than five years, in lands and tenements, are :—

First—That the instrument be in writing.

Second—That it be signed by the party or parties making the same, and be delivered.

Third—That it be acknowledged by the maker or makers; or proved by a subscribing witness.

Fourth—That it be lodged with the clerk of the county court, to be recorded.  (Arts. 997, 5087.)

The method of acknowledging an instrument of writing for the purpose of being recorded, requires the grantor or person who executed the same to appear before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated.  (Art. 5007.)

The proof of any instrument of writing, for the purpose of being recorded, shall be by one or more of the subscribing witnesses personally appearing before some officer authorized to take such proof, and stating on oath that he or they saw the grantor, or person who executed such instrument, subscribe the same ; or that the grantor or person who executed such instrument of writing acknowledged in his or her presence, that he had subscribed and executed the same for the purposes and considerations therein stated; and that he or they had signed the same as witnesses, at the request of the grantor, or person who executed such instrument.  (Art. 5008.)

These are statutory provisions, and the reason thereof is obvious.  In order that every person may know where and in whom the titles to real estate are vested, and may have assurance of good title in the purchase of the same from the ostensible owner, the statutes require titles shall be publicly recorded.  At the same time, lest these statutes, being designed to prevent fraud, should be productive of fraud, it is further provided that if they are not recorded they shall still be deemed good and valid, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration (Art. 4988) ; but,

unless recorded, shall be void as to all creditors and subsequent purchasers, for valuable consideration, without notice. (Arts. 4988, 997.)

The equitable provisions of the statute are equally obvious. While one who has no claims as a creditor of the vendor, and who has actual knowledge of a sale of land, is not permitted by connivance with a vendor to defraud a purchaser; on the other hand, one who, by refusing to comply with the registration act, permits another to incur debts, upon the supposition that the debtor is the real owner of real estate, or who would prevent a creditor from making the property of the debtor liable for a previous debt, is entitled to no favor unless he complies with the requirements of the statute. The protection of creditors has received the same legislative favor in this State as in the other States, as is apparent from the statutes concerning frauds and fraudulent conveyances, as well as the acts upon registration.

The first question for consideration is, was the deed duly probated for registration ? The proof required by the statute is that a subscribing witness shall make oath that "he saw the grantor or person who executed such instrument subscribe the same," etc. The proof in this case is that the subscribing witness "saw Richardson & Co. sign the same." It is admitted that Richardson & Co. was the name of the firm, and not the name of either of the members. It is further admitted that the person and the only person who signed the deed was J. A. Richardson, who signed the firm name to the deed. Richardson did not purport to execute the deed for or as agent of Richardson & Co. If he had so assumed or had executed the instrument, then, by proof that the witness saw him execute it, the probate would have been good. It is the person who really signs the deed whose act is to be proved, and whether he signs as agent of another or of a firm, makes no difference. The witness does not say that he saw J. A. Richardson sign it, but that he saw Richardson & Co. sign it. He stated what

could not be true, and what it is admitted is not true; because Richardson & Co. is the name of a firm; it is the name of what has no animal existence; goods may be bought and sold by Richardson & Co. by any one having power to do the business of the firm; that is to say, by either of the partners. Each has the right to sell the goods belonging to the firm, but neither of them singly is identical with the firm. Richardson can represent Richardson & Co., and so can Moore the other partner; but to say that Richardson is the same as Richardson & Co., and that Moore is the same as Richardson & Co., would make Richardson and Moore identical; or, to take the case before us, we could not know who signed the deed from what the witness deposes; it might be either or neither, and the witness does not tell the name of the person who signed it, for, although there is a person by the name of J. A. Richardson and another by the name of John W. Moore, there is no person by the name of Richardson & Co.

The framers of the statute had in view the fact that a deed is sometimes signed by the grantor in person, and sometimes through an agent. It therefore provides for the acknowledgment or proof of the one actually signing the deed. The execution of the deed must be proved, and whether executed by principal or attorney, it matters not, as the deed itself explains that.

This deed was not legally recorded, because the subscribing witness did not say who signed it, and the registration is a nullity. As the deed was not legally recorded, the creditors had no constructive notice, and as to them it was void. (1 Story's Eq., § 404; 10 Pick., 72; 1 John, Ch. 300; 5 Green, 272.)

"A deed duly recorded is constructive notice of its existence and its contents, to all persons claiming what is thereby conveyed' under the same grantor by subsequent purchase or mortgage, but not to other persons. Thus, where one of several co-tenants conveyed the entire estate by deed, which was recorded, it was held

not to be a constructive notice to his co-tenants of such deed, inasmuch as they did not claim under him.

"But the record of a deed is not constructive notice of its existence or contents, unless all the prerequisites, such as its acknowledgment and the like, have been complied with; nor would it be constructive notice if the deed were on record in any way not authorized by law; and the same would be true of any instrument not required by law to be recorded. It is also true that the registry of a defective deed is no notice of title to any one. If defective in the formal requisites of its execution or proof, it is not entitled to registration at all." (3 Washburn on Real Property, 285.)

If the parties appellant were either J. A. Richardson, or John W. Moore, or their heirs, or their subsequent purchasers, with notice of the trust deed, then the provisions of the statute would not allow them to call in question the trust deed; but as they represent, and are creditors, they are expressly excepted by the statute. If the statutes of our own State are not law, or if the courts of the State can directly or virtually set them aside because they are inequitable according to our ideas of equity, or for any other reason than because they are unconstitutional, then I should be compelled to withdraw my dissent to the opinion of the majority of the court.

I do not propose to discuss this question. It is not the duty of a court to refuse to enforce a positive statute because it seems inequitable or to involve equitable principles in the construction of the plain requirements of statutes.

"The discretion of a judge is said to be the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper and passion. In the worst, it is every vice, folly, and passion to which human nature is liable. *Optima lex quæ minimum relinquit arbitro judicis; optimus judex qui minimum sibi.* (Bouvier's Law Dictionary, page 428.)

This is sufficient to dispose of the case.  But the deed, signed·by one of the firm only, whether in his own name or the name of the firm, is inoperative to convey the real estate of the firm.  It does not follow, as a necessary consequence, that because real property can be conveyed to a firm, in their firm name, that it can be conveyed by the firm in the same way.  Infants, persons insane, and persons under other disabilities, can receive a deed to land.

In order that every person may know the validity of titles to real estate, and that contracts therefor may not be hindered or defeated, and that frauds may be prevented, the statutes require that the titles shall be conveyed by writing.  Whoever owns it must convey it, either directly or through an agent, and if by an agent, this agency must be in writing.  The land belonging to a partnership, if conveyed, must be conveyed by all the members of the firm.  And here is the difference between a partnership and a corporation.  The latter is a legal, statutory, single person, possessed of an immortal body.  A partnership has neither body nor soul.  Because a corporation is a statutory body it is empowered, by statute, to convey real estate; and e *converso*, because a partnership is not possessed. of either such animal or statutory body, it cannot speak, write or do anything, except by its agents, the partners.

When Richardson signed the name of Richardson & Co. to the trust deed, the utmost that was conveyed was his individual interest in the land mentioned in the deed.  I do not wish to be understood as saying he conveyed anything, for that is not before us.

In Story on Partnership, § 94, it is said: " Each partner is required, both at law and in equity, to join in every conveyance of real estate, in order to pass the entirety to the grantee; and if one partner only executes it, whether it be in his own name or in that of the firm, the deed will not ordinarily convey any more

than his own share or interest therein." (Coles v. Coles, 15 Johns., 159, 161.)

One other great American author, Parsons, in his work on Partnership, p. 376, says : "No partner, and no proportion of the partners, can sell or transfer the real estate of the firm outright for money, or by way of mortgage to secure a debt, or to assignees in trust for debts, without the consent and authority of the other partners."

The author had in view the case of a partner holding the title of the property in himself in trust for the partnership, as he adds : " On the first point, that he who happens *to have the legal title* cannot sell the real estate without the consent and authority of the rest, so as to give title to a grantee having notice, *we are quite sure that must be the law.*

" He (or partner) may contract debts and make contracts, which will indirectly reach the realty, because this must finally be subject to the debts of the firm. But he cannot directly convey or appropriate it, excepting so far as he has the legal title in himself. '

The difference, as I understand the case, between the opinion of the majority of the court and myself is, that the court places creditors in the same position, as to their rights, with heirs and subsequent purchasers, with notice or without consideration. The court decide upon what is called equitable principles, and I confine. myself to the statutes.

What the partners may have done or said, either to each other or to anybody else, cannot supply the requirements of the registration act, so as to affect creditors. What the sheriff told the attaching creditors, for the same reason can have no effect or influence, and is not evidence.

Even had there been a deed made by both partners, and recorded without the proof of its execution, creditors could not be affected thereby, or restrained from attaching the property conveyed, as we have already shown by authorities unquestionable.