## MUNDAY TRADING CO. v. J. M. RADFORD GROCERY CO. (No. 8200.)

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1915. Rehearing Denied June 26, 1915.)

1. PAYMENT ⊜➟75—ACTIONS—EVIDENCE—SUFFICIENCY.

In a suit on an account, evidence *held* sufficient to justify a finding that a payment by defendant was to be applied on another's account.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 239; Dec. Dig. ⊜➟75.]

2. PARTNERSHIP ⊜➟217 — PARTNERS — RIGHTS OF.

A partner is competent to show that he had authority to use the partnership funds to pay his individual debts, although that is not within a partner's implied powers.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 419–425; Dec. Dig. ⊜➟217.]

3. PARTNERSHIP ⊜➟125 — RIGHTS OF PARTNER.

A partner while the general and accredited agent of the firm and authorized to bind other members by his acts or contracts within the scope of the partnership, cannot, any more than any other agent, bind the firm by unauthorized acts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 190; Dec. Dig. ⊜➟125.]

4. PARTNERSHIP ⊜➟217—ACTIONS—EVIDENCE—AUTHORITY.

Evidence in an action against a partnership *held* insufficient to show that a partner, who paid out firm moneys in discharging his own debt, was authorized.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 419–425; Dec. Dig. ⊜➟217.]

Buck, J., dissenting in part.

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by the J. M. Radford Grocery Company against the Munday Trading Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

D. J. Brookreson, of Benjamin, for appellant. R. W. Haynie, of Abilene, for appellee.

BUCK, J. J. M. Radford Grocery Company sued the Munday Trading Company, a firm composed of J. H. McLain and R. W. Warren, and the individual members of said partnership, on open account for $958.61, with interest at 10 per cent. and 10 per cent. attorney's fees, alleging that defendant company had agreed to pay the same at Abilene, Tex. The account was for wares and merchandise alleged to have been sold and furnished by plaintiff, a wholesale grocery company, to defendants. Defendants, by way of special answer, admitted the purchase of the goods to the amount alleged by plaintiff, and the agreement to pay the rate of interest and the attorney's fees alleged, but alleged a payment by defendants to plaintiff of $250, with which their account had not been credited, and alleged the refusal on the part of plaintiff to accept an offer on the part of defendants to pay the amount of said open account less the $250 alleged to have been paid and not so credited.

The case was tried before the court without the aid of a jury, and from a judgment for plaintiff against the firm, as a partnership and as individuals, in the sum of $1,120.01, with interest at 10 per cent. from date of judgment, the defendants appealed.

The controversy is over this $250 payment, both litigants admitting the payment; but the plaintiff contended that such payment was made on account and for the benefit of the McLain Company of Knox City, and the defendants contended that such payment was made by and on account of and for the benefit of the Munday Trading Company of Munday, Tex. In addition to being a member of the partnership operating under the name of the Munday Trading Company, J. H. McLain was president of the McLain Company doing a mercantile business at Knox City, and during the years 1913 and 1914 both concerns bought goods from and were indebted to J. M. Radford Grocery Company. In the latter part of 1913, the McLain Company became involved in financial straits and later went into bankruptcy. During this stress it had a number of its checks turned down at the bank, one of which, in the sum of $500,

was given to the Radford Grocery Company. Subsequently $250 of this amount was paid. On or about January 21, 1914, R. E. McDonald, manager of the Stamford branch of the J. M. Radford Grocery Company, and acting under instructions from the home office at Abilene, went to Knox City for the purpose of collecting the remaining $250 due on the dishonored check of $500, and, not finding Mr. McLain at home, and learning that he was in Munday, went over to Munday to see him about the matter. He testified, in substance, that he went from Knox City to Munday in an automobile, and that Mr. R. W. Warren was in the car with him; that, when he reached Munday, he went to the place of business of the Munday Trading Company and saw Mr. Lindsey, who at that time was in the employ of the McLain Company, but later became the manager of the Munday Trading Company; that he asked for Mr. McLain, and was told that he was just fixing to go back to Knox county; that he went out in front of the store, and told Mr. McLain that he had the $500 check given theretofore by the McLain Trading Company and on which there was a $250 balance, and that he had come to collect that amount; that, acting under the instructions of Mr. McLain, Mr. Lindsey wrote a check for $250 payable to the J. M. Radford Grocery Company, and handed it to Mr. McLain and he signed it, said check being as follows:

"The Bank of Munday Unincorporated.
No. ——.
          "Munday, Texas, January 21, 1914.
Pay to the order of J. M. Radford Grocery Co. ...............................$250.00.
Two Hundred and Fifty .........Dollars.
          "Munday Trading Company,
                    "By J. H. McLain, Manager."

That upon the receipt of said $250 check, he remitted the same to the J. M. Radford Grocery Company at Abilene, and the account of the McLain Company was credited with said amount. He further testified that nothing was said during this conversation between him and J. H. McLain, or between him and Mr. Lindsey, about the indebtedness owing the Radford Grocery Company by the Munday Trading Company, and that he was not at that time attempting to collect any indebtedness owing by the Munday Trading Company, but only the indebtedness due by the McLain Company; that he understood that said payment was made for the benefit of the McLain Company and in settlement of its account.

[1-4] While the evidence is conflicting as to whether or not this $250 check was given in payment on the account of the McLain Company or of the Munday Trading Company, and while Mr. J. H. McLain himself testified that he intended said check as a payment on the Munday Trading Company account, yet we think the evidence, as a whole, sufficiently sustains the finding of the court that such

check was in fact intended by both the representative of the J. M. Radford Grocery Company and J. H. McLain as a payment on the McLain Company account; but the majority of the court are of the opinion that, irrespective of the intention and understanding of Mr. McLain, representing the debtor, and Mr. McDonald, representing the creditor, as to the application of said payment, that in the absence of an express agreement, or facts to show an implied agreement, on the part of R. W. Warren, the other partner in the Munday Trading Company, that the partnership funds of the Munday Trading Company should be applied in payment of the debt of the McLain Company, that the court was not justified in concluding, as shown in paragraph 4 of his findings of fact, that such check "was in fact a payment by the McLain Company of the remaining $250 on said $500 dishonored check, * * * and was not a payment on the indebtedness by said Munday Trading Company." A partner is competent to show that he had authority to use partnership funds to pay his individual debts.    Young v. Read, 25 Tex. Supp. 113; Sanders v. Bush, 39 S. W. 203; Fore v. Hitson, 70 Tex. 517, 8 S. W. 292. A partner is deemed the general and accredited agent of the firm, and is authorized to bind the other members by his acts or contracts which are within the scope or objects of the partnership. When he exceeds its bounds, his acts are no more binding upon the firm than are the unauthorized acts of any other agent binding upon his principal. McAlpin v. Cassidy, 17 Tex. 449; Bell v. Beazley, 18 Tex. Civ. App. 639, 45 S. W. 401; Baldwin v. Richardson Co., 33 Tex. 16; Randall v. Merideth, 76 Tex. 669, 13 S. W. 576. But the general rule is that one partner may not apply the partnership funds or securities to the payment of his own debt. Goode v. McCartney, 10 Tex. 193; Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363. And before such application of partnership funds to the individual benefit of a partner can be made binding on the other member of the partnership, it must affirmatively appear that such individual member had authority to so apply the funds of the partnership. This, of course, may be shown by express authority or by a course of dealing theretofore had which would justify the conclusion that he had such authority. But we find nothing in this record that sustains the conclusion that J. H. McLain, or any other stockholder in the corporation known as the McLain Company, was authorized to apply the funds of the Munday Trading Company in payment of the McLain Company's debts. And, in the absence of such showing, we are of the opinion that appellant's second assignment of error, which assails the correctness of the court's fourth finding of fact, should be sustained.

R. W. Warren, the other partner in the

Munday Trading Company, testified, in part, as follows:

"I was president of the Bank of Munday in January, 1914. The McLain Company did not have any account with that bank at that time. This check, that was paid, was paid out of the funds of the Munday Trading Company. * * * I was not present when this check was delivered to Mr. McDonald. I do not know upon that account it was to be credited by agreement between the parties. All that I know is that the Bank of Munday paid it. I did not have any interest in the McLain Company whatever."

J. H. McLain testified, in part, as follows:

"I say that this check was paid on the Munday Trading Company account and not on the McLain Company account. * * * I don't remember whether I gave the party to whom I gave this check any instructions concerning the check. I just handed him the check. I don't have any recollection of telling him to apply it to the McLain account. * * * At the time I signed that check it was my understanding that that check was to be credited to the Munday Trading Company."

The above-quoted testimony of Mr. McLain is set out in this opinion not for the purpose of showing that the trial court was not justified, in effect, that it was the intention of Mr. McLain and the representative of the Radford Grocery Company that the $250 check should be applied on the McLain Company account; for, as before stated, in spite of a sharp conflict of evidence, on the whole we believe there is ample testimony to sustain the court's finding that it was the intention of these two parties to have the check applied on the McLain account. But this testimony is quoted for the purpose of showing that even Mr. McLain did not testify that he had authority from his partner, Mr. Warren, to apply the partnership funds to the payment of the McLain Company account, and, in the absence of some testimony to that effect, it is our judgment that the judgment of the court below cannot be sustained. The trial was upon the theory that if McLain and the collector of the Radford Grocery Company intended that the check should be applied on the McLain Company account, that intention would of itself be controlling upon the issue of payment pleaded by the Munday Trading Company. There was no finding by the court, and no evidence to support such a finding, that McLain had authority from Warren to apply funds belonging to the Munday Trading Company to the payment of the McLain Company's debts. Furthermore, the proof is undisputed that the collector knew at the time of accepting the check that it was drawn upon funds belonging to the Munday Trading Company and not to the McLain Company.

Judgment reversed and cause remanded.

BUCK, J. (dissenting). I cannot fully agree with the conclusions reached by the majority of the court as to what is the reasonable inference from the testimony in this case upon the vital question as to whether or not, in the application of the $250 check in payment of the McLain Company account, Mr. McLain had at least the tacit consent of his partner, Mr. Warren, to so apply it. Warren testified on behalf of the defendants, he was vitally interested in this matter, and he, as an experienced business man, and his attorneys, well versed in the law, must have known that the question of his consent or acquiescence vel non in the application of this $250 check, as made, would largely determine the court's action in sustaining such application or not. Nowhere in his testimony does he state, directly or indirectly, that McLain did not have from him authority to give this check of the Munday Trading Company in payment of the account to which it was applied. He testified as to his official relation with the Bank of Munday; of his lack of connection with the McLain Company; of the automobile trip from Knox City to Munday with Mr. McDonald; of his partnership in the Munday Trading Company with McLain; of the application of the Munday Trading Company for its charter and the difficulties experienced in securing same; but upon this most important question he seems to have maintained a most discreet silence. The writer believes, not so much from what Mr. Warren said, but from what he did not testify, that the court was entirely justified in concluding that in fact Mr. McLain had the authority or acquiescence of his partner in the appropriation of the partnership funds to the purpose to which it was applied. The writer is of the opinion that the judgment of the trial court should be affirmed.