REEVES, STEVENS & Co. *et al.*

*v.*

MARK AYERS *et al.*

1. PARTNERSHIP PROPERTY—*of the relative rights of creditors of the firm and creditors of individual members of the firm.* It is undoubtedly true, as a general proposition, that when a partnership and its members are insolvent, and the firm has been dissolved, an equity exists in favor of the creditors of the firm, in respect to lands of the firm purchased with partnership funds, superior to that of creditors of the individual partners.

2. But cases may, and do, arise, where an equal or superior equity may be created in favor of a creditor of an individual member of the firm, as, where one has furnished to one of the members, before the partnership was formed, the capital upon which the business was commenced.

3. So, where the money of a creditor of one of the partners, contributed alone to the purchase of lands belonging to the firm, natural justice would say that the claim of such creditor for reimbursement out of the lands, was superior to any equity of creditors of the firm.

4. Partners have a lien on the joint property for the discharge of the firm debts, when such lien has not been parted with. And when the lien exists, the equities of creditors of the firm attach to, or unite with, the lien of the partners, and are thus rendered availing to them.

5. This equity of the creditor is not a lien, but something approaching to it, of which, with the assent of the partners entitled to the lien, they may avail themselves in a court of equity, against the partnership effects.

6. But this rule only relates to the rights of creditors after a dissolution, and to property undisposed of, and to which prior liens have not attached.

7. The creditors of a solvent firm have no lien upon the partnership property for the payment of their debts. A solvent firm may convey or mortgage the property of the partnership, in payment or for the security of an individual debt of one of the partners.

8. PARTNERSHIP LANDS—*conveyance thereof by one partner.* Where the legal title to lands which really belong to the firm, is in one of the partners only, a mortgage executed by the one holding the legal title to secure his individual debt to one who has no notice of the equitable rights of the other partners, will vest a lien in the mortgagee discharged of any equity in their favor, or of the creditors of the firm.

9. But if such mortgagee takes the mortgage with notice that the lands belonged to the firm, and the other partners did not consent thereto, he will hold subject to their superior lien upon their proportionate interest in the lands for the payment of the firm debts, and an equity will attach to that superior lien in favor of the creditors of the firm.

10. NOTICE—*by possession.* Possession of land by a purchaser, or person having an interest therein, is sufficient to charge all persons with notice of his rights, whether legal or equitable.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. CHARLES R. STARR, Judge, presiding.

This was a suit in chancery instituted in the court below by Reeves, Stevens & Co., Henry Falls, Martin Stadler and Brother, Mitchell and Rammelsburg, Calvin B. Camp, merchants, doing business in the City of Cincinnati, and several others, against Mark Ayers, Theodore Ayers, Jesse B. Ayers

and Timothy B. Mason, and others, to set aside certain mortgages and conveyances of land executed by Mark Ayers, and to subject the land to the payment of debts due to the complainants as creditors of Mark Ayers and Theodore Ayers, who were partners, doing business under the name of Ayers & Co., at Concord, in Iroquois county.

It appears that certain lands in Illinois were purchased with the proceeds of the business of the firm of Ayers & Co., the title to which was taken in the name of Mark Ayers alone. Subsequently, Mark Ayers executed a mortgage upon a portion of these lands to secure an individual debt owing by him to Mason, and he conveyed other portions of the lands to Jesse B. Ayers. After the recording of the mortgages and deed, the complainants recovered certain judgments against Ayers & Co., and this bill was filed for the purpose of setting aside the mortgages and deed, which were alleged to have been made in fraud of the rights of the complainants as creditors of the firm of Ayers & Co., and to subject the lands to the payment of their debts.

The circumstances under which the mortgages were made, are set forth in the opinion of the court.

Upon the hearing in the Circuit Court a decree was rendered dismissing the bill. The complainants thereupon sued out this writ of error.

Mr. GEORGE B. JOINER and Mr. JAMES FLETCHER, for the plaintiffs in error.

Messrs. GOOKINS and ROBERTS and Mr. STEPHEN G. BOVIE, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed to set aside certain mortgages and deeds of conveyance of real estate, and to have

judgments recovered by complainants against defendants, satisfied by a sale of the property. It appears that Mason, in his lifetime, for the purpose of assisting his son-in-law, Mark Ayers, in commencing business, loaned him about $5,000, which he had procured by borrowing and mortgaging his own property to secure its payment. No security was given by Mark at the time, but it was agreed that so soon as he acquired lands in Illinois, he would secure the money thus loaned to him by mortgage on it. It seems that Mark invested the money in goods, and took his brother Theodore into the firm as a partner. They had but little capital, it being almost entirely the money loaned Mark by Mason. Out of the proceeds of the business of the firm, the Hollingsworth and Sherman farms, as well as other lands, were purchased.

According to their previous agreement, Mark mortgaged to Mason the Hollingsworth farm, and some lots in the town of Concord. Subsequently, Mason released his mortgage on the town lots, and took a mortgage on the Sherman farm. At this time the firm was doing business as usual. Mason resided at Cincinnati, and it does not appear that he was informed that Theodore was a partner of Mark. The deeds for these lands to Mark, were duly recorded, as well as the mortgages to Mason. Complainants recovered their judgments subsequently to the execution and record of these mortgages, so that the only ground which they rely upon for a recovery is that the mortgages to Mason and the deeds to Jesse Ayers, are fraudulent and void, and made to hinder and delay creditors.

It is insisted, that as the lands were purchased with joint funds of the firm, they were partnership property, and the creditors of the firm have a superior equity over the creditors of the individual members of the co-partnership. It is undoubtedly true, as a general proposition, that when a partnership and its members are insolvent, and the firm has been dissolved, such an equity does exist. But the reason of the rule seems to be that the creditors of the firm, having furnished or contributed to the fund, natural equity gives them

a superior claim to that of persons who have not contributed to or created the fund. Cases may, and do, arise, where an equal or superior equity may be created in favor of a creditor of a member of the firm. As in this case, by furnishing the capital upon which the business was commenced. Mason's money contributed largely to the means with which these farms were purchased. For ought that appears, Mason's money contributed alone to their purchase, and if so, natural justice would say that his claim was superior to that of plaintiffs in error.

If Mason's money purchased these lands, and plaintiffs in error afterwards gave credit to the firm, we are unable to see that they should be preferred in payment out of this fund. Having furnished a large portion of the capital of the firm, Mason certainly acquired on equal equity to that of plaintiffs in error. And it is a maxim that the equities being equal, the party who unites the legal title with his equity must prevail. The legal title to these lands was in Mark Ayers, and when Mason obtained these mortgages he thus united a legal lien to his prior equity, which is superior to the mere naked equity of plaintiffs in error, as he did this before they took any steps to enforce their equity. If, however, Mason knew that Theodore had an equitable title to an undivided half of the property, it would be different as to that half, unless it was with his consent.

As to the Sherman farm there is no evidence that he had any notice, or is in any way chargeable with notice. Upon that farm, then, there seems to be no doubt that his lien is complete, prior and superior to that of plaintiffs in error. But as to the Hollingsworth farm, Theodore was in possession at the time the mortgage was executed. And this court has repeatedly held, that possession by a purchaser, or person having an interest in the land, is sufficient to charge all persons with notice of his rights, whether legal or equitable. Mason must, therefore, be held to have received his mortgage with notice that in equity Theodore held the title to an undivided half of the property. And without Theodore's consent, no conveyance

which Mark could make to a person having notice, could divest him of title. Had it appeared that Mark made the mortgage to Mason with the consent of Theodore, then the lien would have been complete to the whole property, but in the absence of such consent he only acquired a lien on Mark's half.

There is no evidence that this firm was insolvent at the time these mortgages were executed; and we are aware of no rule of law which will prevent a solvent firm from conveying or mortgaging property of the partnership, or from paying the debts of one partner with the joint property of the firm. And unless it is done for fraudulent purposes and the vendee participates in the fraud, he will acquire title. The creditors of a solvent firm have no lien upon the partnership property for the payment of their debts. Otherwise every person trading with a partnership would be liable to loss by its subsequent insolvency. No rule is more familiar than that the interest of a partner may be sold on execution to satisfy an individual debt.

It is urged that when the partners themselves have a lien upon the joint property, for the discharge of the firm debts, that lien may be made available for the benefit of creditors of the firm. It is held, that partners have such a lien in all cases, unless they have parted with it. In such a case, the equities of creditors attach to, or unite with, the lien of the partners, and are thus rendered availing. They have no lien, but something approaching to it, of which, with the assent of the partners entitled to the lien, they may avail themselves in a court of equity against the partnership effects. Story on Part. sec. 360. It is, however, to be observed, that this only relates to the rights of creditors after a dissolution, and to property undisposed of, and to which prior liens have not attached. If Theodore consented to the execution of the mortgage on the Hollingsworth farm, he thereby parted with his equitable title, and had no lien upon this property for the payment of the firm debts after the dissolution occurred, and a prior lien had attached in favor of Mason, and there could in

that case be nothing to which the equities of the firm creditors could attach.

A conveyance from Theodore to Mark is spoken of in the record but there was no evidence produced of its existence. If there is such a deed, and it was made before the mortgage to Mason was executed, or if afterwards, and before liens of creditors attached, Mason's lien would be complete to the whole of the Hollingsworth farm. Or, if his consent to the execution of the mortgage was shown, the result would be the same. But in the absence of such a deed or such consent, the equitable title to an undivided half of that farm is still in Theodore, and liable to sale for the payment of the firm debts. For the error in dismissing the bill as to this half of the Hollingsworth farm, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*