FRANK O. MILLER ET AL.

v.

THE ROBINSON BANK ET AL.

*Partnership—Insolvency of—Priority of Partnership and Individual Creditors—When Individual Creditors have Equal Equity with Partnership Creditors as to Partnership Property—Judgment Creditors—Conveyance Subject to Incumbrances.*

Miller v. Robinson Bank.

1. A mortgage executed by one partner on his interest in partnership real estate as security to a party signing a note with him as surety, which note was used in the purchase of an interest in property used by the firm (the surety having been compelled to pay the note), creates a valid lien in favor of the surety even as against creditors of the firm.

2. Where two of three partners paid in cash their proportion of a firm debt, and the third partner gave his note for his proportion, which note was also signed by sureties, a mortgage given by this partner, to secure his sureties, on his interest in firm realty, has no less equity than a lien of a firm creditor.

3. A clause in a deed providing that the grantee takes subject to incumbrances on the interest conveyed, as effectually charges the land conveyed with the incumbrance of the mortgage debt as if the grantee expressly assumed the payment of the debt.

4. Where the amount of a mortgage is deducted from the purchase money of the incumbered property, the grantee in effect undertakes to pay the amount of the purchase money represented by the mortgage to the holder thereof and is estopped from denying the validity of the mortgage.

5. In the case presented, this court holds that the intervening petition of judgment creditors was properly dismissed, their lien being subject to that of the original complainant.

[Opinion filed February 4, 1890.]

IN ERROR to the Circuit Court of Crawford County; the Hon. WM. C. JONES, Judge, presiding.

Newton and Wilkin were the owners of a mill, and Wilkin sold to one Dyer an undivided one-third interest, and Dyer executed a mortgage on that one-third interest to secure the purchase money, and became a member of the firm.

Dyer died, and a decree of foreclosure was entered on that mortgage, and on the 20th of April, 1883, under that decree, that one-third interest was sold.

The other two-thirds interest was then owned by John Newton. At the sale made under the decree the one-third interest of Dyer was bid off by John S. Emmons, by an arrangement between Emmons and the mortgagee at the time of the master's sale, the amount for which the one-third interest was sold, being $3,500, and that was satisfied by the execution of a note by Emmons to the mortgagee for $2,000, which was secured by a mortgage on a farm and the execu-

tion of a further note by Emmons for $1,500, with Willis Emmons as surety. Shortly after the time of the sale under the decree of foreclosure John S. Newton, who then owned a two-thirds interest in the mill, sold and conveyed by deed the undivided one-third thereof to Frank O. Miller.

At the time of the execution of the $1,500 note Emmons promised his surety, Willis Emmons, that when the time of redemption expired and he secured a deed under the foreclosure sale he would execute a mortgage to him to indemnify him from loss as such surety.

When Newton and Miller then became each severally the owner of the undivided one-third of the mill, Emmons holding a certificate of purchase of one-third interest, they formed a partnership for operating the mill and for the purchase and sale of grain (but no written articles of co-partnership were entered into) and went into possession of the mill.

For the purpose of improving the mill, they contracted for the expenditure of a large sum of money and became greatly indebted to the Robinson Bank for money advanced.

When that indebtedness reached the sum of about $5,400, the Robinson Bank demanded payment from the several members of the firm, and Newton and Miller each paid the bank the sum of $1,800, while John S. Emmons made a note to the bank for $1,800, with Wiley Emmons and William W. Walter as sureties thereon.

At the time of the execution of that note he promised his sureties that when the time of redemption expired and he secured a deed, he would execute a mortgage to them to indemnify them from loss as such sureties.

After the time of redemption expired a deed was made by the master to John S. Emmons, who then executed a mortgage on September 1, 1884, to indemnify Willis Emmons as his surety on the note for $1,500, of date of April 20, 1883, and on the same date executed a mortgage to Wiley Emmons and W. W. Walter to indemnify them as his sureties on the note for $1,800, of date August 28, 1883.

In each case the property in the mortgages described was

the undivided one-third part of the mill, being the property conveyed and sold by the master under the decree of foreclosure.

The note for $1,500 made by John S. and Willis Emmons was at the April term, 1885, of the Crawford Circuit Court, sued on, and judgment was recovered against Willis Emmons and the full amount of that judgment paid by Willis Emmons, John S. paying no part thereof.

On May 1, 1883, Frank O. Miller made his note for $5,500 payable at the Robinson Bank, to Thos. V. Lamport, and on the 22d of July, 1884, Miller executed a mortgage to Lamport on his undivided one-third interest in the mill property to secure the note for $5,500. Those three mortgages were recorded on the 2d day of September, 1884.

On September 2, 1884, the firm of Newton, Emmons & Miller was insolvent, being indebted to the Robinson Bank in the sum of $21,585.23; to the John T. Noyes Manufacturing Company, $2,549.87; to the George F. Smith Middlings Purifier Company, $810; to P. Ferrier & Son, $1,020.13; to H. D. Edwards & Co., $455. Each of the last four amounts were evidenced by notes due September 3, 1884.

The Robinson Bank having notice of the existence of these several mortgages, and seeking to collect their indebtedness on September 2, 1884, procured the execution of a deed by John Newton and wife, and Frank O. Miller and wife, conveying to Abner P. Woodworth, as trustee for the bank, all of the interest of the grantors in the mill property. That deed contains this clause: "The grantee takes subject to incumbrances on the interests conveyed." The consideration mentioned in that deed is $5,333.

On the same day Newton and Miller confessed judgment in favor of the Robinson Bank for the sum of $16,252.

At that time Emmons refused to make a deed, but on September 4, 1884, Emmons and wife executed a deed in consideration expressed in the deed of $3,333.33, conveying the undivided one-third interest in the mill property to Woodworth, as trustee for the bank, and on the same day confessed judgment to the bank for $16,252, the same as that of New-

ton and Miller. On the judgments so confessed the bank realized by sale of personal property the sum of $5,380.06.

On January 14, 1885, the bank gave credit on their books for the sum of $16,000 as the consideration for the conveyance of the mill property.

At the March term, 1885, the Robinson Bank filed its bill to remove cloud from and quiet title, and alleges an agreement for the sale of the mill and the purchase of the mill by the bank, and that the conveyance was made to it for an agreed consideration of $16,000.

The bill charges that Miller, at that time, informed the bank that his interest was mortgaged to Thomas V. Lamport, and Emmons also informed the bank that his interest was mortgaged.

The bill further charges that the said several notes, secured by the said several mortgages, were given for individual debts of Emmons and Miller, respectively, and that the debt due the bank was a firm debt, and alleges that the mortgages by Emmons and Miller, respectively made, were without the knowledge or consent of Newton, and equitably could not be paid out of or secured by firm assets until the firm debts were paid, and charges the three mortgages mentioned were a cloud upon the title of the Robinson Bank, and asks to have them canceled and set aside.

Willis Emmons filed answer and cross-bill, by which cross-bill he sought to foreclose his mortgage.

Thomas V. Lamport filed answer and cross-bill by which cross-bill he sought to foreclose his mortgage.

Wiley Emmons and Wm. Walter filed answer alleging the validity of their mortgage.

The John T. Noyes Manufacturing Company, the G. T. Smith Middling Purifier Co., P. Ferrier & Son and H. D. Edwards & Co., filed an intervening petition asking leave to become parties defendant, and filed answer and cross-bill; and by their cross-bill allege the recovery of judgments against Newton, Emmons & Miller, for materials furnished in repairing the mill, and that the same was partnership indebtedness, and entitled to priority of payment over individual debts, from

Miller v. Robinson Bank.

the proceeds of the sale of firm property, and charging that the debts secured by mortgage were individual debts, and that the conveyance by deeds as made to the bank were made by John Newton, Frank Miller and John S. Emmons as tenants in common, and therefore did not affect a conveyance of the mill property belonging to the firm, and alleging their lien, respectively, by reason of their respective judgments, was superior to any claim acquired by the bank or by the mortgagees. The court entered a decree finding the debt secured by the three mortgages were individual debts; that the conveyance made to the bank vested the title to property in the bank for a consideration, $16,000, and that the property of the firm must first be applied to the payment of firm debts; that the mortgages were a cloud on the title of the bank, and decreeing that the same be canceled, and enjoining the mortgagees from seeking to foreclose their mortgages against the mill property, and dismissing the cross-bills of the mortgagees. And further decreeing the title vested in the bank was prior and superior to the liens of the judgments of the intervenors, and decreeing a dismissal of their cross-bills. The defendants to the original bill sue out this writ of error and assign as error the decree canceling the mortgages and dismissing the cross-bills of the mortgagees and judgment creditors.

Messrs. PARKER & CROWLEY, for plaintiffs in error F. O. Miller, W. S. Emmons et al.

The money borrowed and secured by the mortgages in question was for the purchase money of the premises, and in equity, if the surety paid the money as surety or furnished the purchase money, they should be subrogated to all the rights the vendor had against the vendee, and they have a superior equity to the party who may furnish money afterward, especially when they get the legal title, as the mortgagees have in this case.

This case, we take it, falls clearly within the rule announced by the Supreme Court in Reeves v. Ayers, 38 Ill. 418.

It has been recently held by the Court of Appeals in New York, that where a judgment was obtained against the individ-

ual members of the firm, and firm real estate was sold on the same, the title thus obtained would be paramount to a deed obtained on a partnership judgment subsequently obtained against said firm, and the sale of the same real estate thereon. Davis v. Delaware & Hudson Canal Co., 15 N. E. Reporter 873.

If Willis Emmons paid off the debt to Wilkin for the purchase money he is subrogated to all the right Wilkin had to enforce his lien, if he had taken no security. The bank was not an innocent purchaser for it knew of the fact that John S. Emmons was indebted to Wilkin and hence is not to be protected as if it had no knowledge. Lochenmeyer v. Fogarty, 112 Ill. 572; Rice v. Rice, 108 Ill. 199.

In this case, evidently, the Lamport mortgage was at the time deducted from the purchase price, and therefore the law implies a promise on the part of the purchaser to pay the mortgage. Comstock v. Hitt, 37 Ill. 548; Hammer v. Johnson, 44 Ill. 193; Maher v. Lanfrom, 86 Ill. 513; Darst v. Bates, 95 Ill. 493; Sands v. Church, 6 N. Y. 347.

And if, from the purchase price, Lamport's mortgage was deducted, then the bank owes amount so deducted, and an action at law would be, and could be, maintained to recover same. Burr v. Burr, 24 N. Y. 178; Trotter v. Hengle, 12 N. Y. 74; Pretney v. Farnhaen, 67 Wis. 187; Bolles v. Beach,. 22 N. J. Law, 680; Wilson v. King, 23 N. J. Eq. 150; Lamb v. Tucker, 42 Iowa, 118; Wayne v. Terry, 37 N. J. Law, 339; Heed v. Freeland, 30 N. J. Eq. 591; Truchell v. Means, 8 Bissell Cir. Ct. 211; Jones v. Parkes, 78 Indiana, 537; Flagg v. Geltmacher, 98 Ill. 293; Drury v. Holden, 121 Ill. 130; Rogers v. Herron, 92 Ill. 583; Lilly v. Palmer, 51 Ill. 331; Fowler v. Fay, 62 Ill. 375; Henderson v. Bellew, 45 Ill. 322; Essley v. Sloan, 116 Ill. 391; Bay v. Williams, 112 Ill. 91.

The bank having accepted the deed with condition, "subject to incumbrances," waived any preferred right it may have had over the mortgagees. See Mahaney v. Mackulren, 54 Ind. 268.

The purchaser acquired no greater right than the grantors had; consequently, if Miller and Emmons could not file a bill

to set aside the mortgages, the bank could not. Jones on Mortgages, Secs. 632 and 1202; Medley v. Elliott, 62 Ill. 532; Waterson v. Kirkwood, 17 Kansas, 9; see, also, Jones on Mortgages, Secs. 744, 1489 and 1491; Crawford v. Edwards, 33 Mich. 354; Miller v. Thompson, 34 Mich. 10.

When the mortgage debt is a part of the purchase money, although the purchaser has not entered into any agreement to pay it, he is, nevertheless, bound to protect and indemnify the grantor. Jones on Mortgages, Secs. 751, 752, and cases there cited.

Mr. E. E. NEWLIN, for plaintiffs in error John T. Noyes Manufacturing Company et al.

The real estate and mill property was partnership property. See Story on Partnership, Secs. 2, 82 and 96; 3d Vol. Kent's Com. margin, page 24, tenth edition; Bopp v. Fox, 63 Ill. page 540; Simpson v. Leech, 86 Ill. page 286; and the mortgages given thereon by Emmons and Miller to secure their individual indebtedness are void as to these complainants in error, for one partner can not make a valid mortgage on his interest in the partnership property, without the knowledge and consent of all the other partners; see Smith v. Andrews, 49 Ill. page 28; and it would not change this rule, though money loaned to one partner be used by the partnership in partnership business. See Story on Partnership, Secs. 140 and 367; Lill's Ex'rs v. Egan, 89 Ill. 609.

That the real estate and mill property, being partnership property, was primarily liable for the payment of the partnership indebtedness, is a principle of law well settled. Ladd v. Griswold, 4 Gilm. 25; Morrison v. Kurtz, 15 Ill. 193; Rainey v. Nance, 54 Ill. 29; Adams v. Sturges, 55 Ill. 468; Simpson v. Leech, 86 Ill. 286; Nat'l Bank v. Bank of Commerce, 94 Ill. 271.

The facts and circumstances in this case all go to show that defendants in error, as part of the consideration for the conveyance of the real estate and mill to them by John Newton and wife, Frank O. Miller and wife, and John S. Emmons and wife, assumed and agreed to pay individual debts of John

S. Emmons and Frank O. Miller, and such conveyance was void as to these complainants in error, they being partnership creditors of Newton, Emmons & Miller, and should be set aside, and the mortgages given on said property by Emmons and Miller to secure their individual indebtedness are also void as to these complainants in error.

And again, the conveyance of the real estate and mill to defendants in error by John Newton and wife, Frank O. Miller and wife, and John S. Emmons and wife, were but individual conveyances of their partnership property, and only conveyed to defendants in error what interest the grantors would have in the property conveyed after the partnership debts of Newton, Emmons & Miller had been fully paid. Bopp v. Fox, 63 Ill. 540; Rosenstiel v. Gray, 112 Ill. 282; Trowbridge v. Cross, 117 Ill. 109.

Messrs. CALLAHAN, JONES & LOWE, ˈattorneys for defendants in error.

The fact that each had bought and held the legal title to a certain share of the property, did not make it individual property. The purpose for which it was bought and the manner of its use determines its character. Rainey v. Nance, 54 Ill. 29; Faulds v. Yates, 57 Ill. 416.

It will not be questioned that property so bought, held and used for partnership purposes, is partnership property, and is to be treated as a part of the stock in trade of the partnership. Story's Equity Jurisprudence, Secs. 674 to 683–1253; Trowbridge v. Cross, 117 Ill. 109; Bopp v. Fox, 63 Ill. 540; Rainey v. Nance, 54 Ill. 29.

Rainey v. Nance has so many features in common with this case that we invite special attention to it.

If these mortgages of Emmons and Miller were free from any suspicion, or fraudulent act or intent, as they are not, they would only convey to the several mortgagees such interest in the mortgaged premises as might remain to the mortgagors after the payment of all partnership debts, and after a settlement between the partners and the payment of the balances that should be found due from one partner to another. Hill-

iard on Mortgages, Vol. 1, page 120, note; Collyer on Partnership, Secs. 9, 20 ; Railsback v. Lovejoy, 116 Ill. 448.

The use of partnership property to pay individual debts is beyond the scope of the partnership, and it can not be so used unless by consent of all the partners expressly given. McNair v. Platt, 46 Ill. 213 ; Smith v. Andrews, 49 Ill. 28 ; Buchanan v. Meisser, 105 Ill. 644.

Partnership real estate is treated as personal property as between partners and their creditors. Story's Equity Jurisprudence, Secs. 674 to 683; Dyar v. Clark, 5 Metcalf, 562; 39 American Decisions, 697, see notes; Buchanan v. Sumner, 2 Barbour's Ch. 165 ; 47 Am. Dec. 365.

PHILLIPS, J. A partnership may exist by verbal agreement; written articles are not necessary to constitute it.

It is a general rule that when a partnership and its members are insolvent, the creditors of the firm have a superior equity over the creditors of the individual members of the co-partnership, in the marshaling and distribution of the partnership property.

The reason of the rule is based on the theory that the partnership fund is contributed to, by the creditors of the firm, and such contributions are equitably entitled to a superior claim over those who have not aided in the creation of the fund.

But, as was held by the Supreme Court in Reeves, Stevens & Co. et al. v. Mark Ayres et al., 38 Ill. 418, "Cases may and do arise where an equal or superior equity may be created in favor of a creditor of a member of the firm, as, in this case, by furnishing the capital upon which the business was commenced. Mason's money contributed largely to the means with which these farms were purchased. For aught that appears Mason's money contributed alone to their purchase, and, if so, natural justice would say that his claim was superior to that of plaintiff in error.

"If Mason's money purchased these lands, and plaintiffs in error afterward gave credit to the firm, we are unable to see that they should be preferred in payment of this fund."

The purchase by John S. Emmons, at the master's sale, of property to constitute and create a part of the partnership fund, was, by the execution of a note for $1,500 on which Willis Emmons was surety, which note was afterward sued on and collected from Willis Emmons and was the creation *pro tanto* of partnership assets and the promise to indemnify the surety by executing a mortgage on the interest of that partner in the firm property, afterward carried out by the execution of a mortgage; and placing the same on record before any other lien attached, would give a superior lien to the mortgagee.

And the maxim, "Where there are equal equities the first in order of time shall prevail," is applicable.

The equity of one who aids in creating the partnership fund at the commencement of the partnership, is not less than one who, by becoming a creditor of the firm, has contributed to its creation. Reeves, Stevens & Co. et al. v. Ayres et al., *supra.* It was error to decree the cancellation of the mortgage to Willis Emmons and dismiss his cross-bill.

The $5,400 advanced by the bank to the firm to pay for improvements in the mill created a partnership liability from the firm to the bank, and the execution of a note to the bank by one of the partners, and the giving of personal security on that note did not destroy the equitable character of the debt.

Wiley Emmons and William W. Walter, by becoming security on that note, became security for a debt that was equitable, owing by the firm.

The execution of a mortgage by one member of the firm to indemnify the sureties on that note, would not make the equity of such sureties inferior to the equity of creditors of the firm.

It was error to decree the cancellation of the mortgage to Wiley Emmons and William W. Walter. The title acquired by the bank was by the execution of the deeds made by Newton and Miller, and by Emmons. At the time of the execution of those deeds the bank had knowledge of the existence of the mortgages.

The bank accepted a deed from Miller with full knowledge of the existence of the mortgage from Miller to Lamport, and accepted that deed with a recital therein—" The grantee takes subject to incumbrances on the interest conveyed." By that acceptance of the deed, reciting that the grantee should take, subject to incumbrance, the land conveyed, it is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had expressly assumed the payment of the debt, or had himself made the mortgage on the land to secure it. Sweetzer v. Jones, 35 Vt. 317; Cobb v. Dyer, 69 Maine, 494; Fuller v. Hunt, 48 Ia. 163; Manwarring v. Powell, 40 Mich. 371; Berry v. Whitney, 40 Mich. 65; Briscoe et al. v. Power, 47 Ill. 447.

The amount of an existing mortgage having been deducted from the purchase money of the incumbered property, the grantee in effect undertakes to pay the amount of the purchase money represented by the mortgage to the holder of it, and is estopped to deny its validity as if he had agreed to pay it. Johnson v. Thompson, 129 Mass. 398; Tuite v. Stevens, 98 Mass. 305; Freeman v. Auld, 44 N. Y. 50.

The claim of the bank against Newton, Emmons & Miller being $21,585.23, when the bank received the conveyance made by Newton and Miller, and then took a confession of judgment by Newton and Miller for $16,252, it is apparent that they credited Newton, Emmons & Miller with the difference between the amount of their debt and the amount for which they took a confession of judgment, and that difference would be $5,333.23.

The evidence shows that the price agreed on for the mill was $16,000 at the time that conveyance was made. And however the property was regarded, as being held as firm property, or held by the partners as joint tenants or tenants in common at the time the deed was executed, it is apparent the bank at that time treated the mortgage as an incumbrance on the interest of Miller, and credited the firm with the amount of the incumbered interest of Newton, which was $5,333.33, although the consideration expressed in the deed was $5,333; and we can not escape the conclusion that the bank dealt with

the property as though it was held by the members of the firm as joint tenants or tenants in common.

By the testimony of Miller and Lamport, it is claimed that the money so advanced by Lamport to Miller was used by Miller in purchasing the one-third interest in the mill, and in paying for improvements made on the mill property.

If such be the fact, then what is said with reference to the mortgage of Willis Emmons, would be equally applicable to the Lamport mortgage.

The good faith of the Lamport mortgage is denied in the bill and is in issue. Lamport refused to answer questions as to the source from which he derived the money advanced to Miller, it being insisted that he had derived the money from Miller or Miller's wife. We do not, from the evidence in this record, express any opinion on the good faith of the Lamport mortgage.

The decree, however, does not find it fraudulent in fact, but proceeds solely on the theory that it was an individual debt, and therefore cancels the mortgage and dismisses the cross-bill of Lamport.

From the nature of the conveyance, the recital in the deed made by Newton and Miller to the bank, the proof in this record, and the finding as made by the court with the relief decrees, we hold the court erred in canceling the Lamport mortgage and dismissing the cross-bill of Thomas V. Lamport. If, however, that mortgage was fraudulent and Lamport did not loan the money to Miller, the bank has such an equity that the recital in the deed could not be held to preclude the bank from having the mortgage canceled, as the position of the bank with reference to the property conveyed would be different from a grantee taking without any equitable interest other than that derived solely from the conveyance and the recitals therein.

The title acquired by the bank by the conveyance made by Newton and Miller, and that of Emmons, vested in the bank all of the interest of the firm and the respective members thereof, except as to incumbrances with equal equities.

If the Lamport mortgage was fraudulent, and the note was

without consideration, the bank's equities being such that for fraud in fact, it may have the Lamport mortgage canceled, it would take the title to the mill subject only to the mortgage of Willis Emmons, and that of Wiley Emmons and William W. Walter, the good faith of which last two mortgages is not in issue. The title thus acquired by the bank was prior to the liens of the intervening judgment creditors.

The claims on which the intervenors recovered judgment were in their nature of equal equity with that of the bank.

The conveyance to the bank, whether made by the members of the firm as a firm as tenants in common, or as joint tenants, can not change the equities of the bank, that title being acquired before the lien of the judgment in favor of the intervenors attached. The right acquired by the bank with reference to the mill property is superior to the lien of the judgment creditors, it having been more vigilant than they.

The maxim that "Equity aids the vigilant and not those who slumber on their rights," may be invoked by the bank for its protection.

There was no error in dismissing the cross-bill of the judgment creditors.

The decree is in part affirmed and in part reversed, and the cause is remanded.

