J. T. SWEARINGEN AND C. C. GARRETT, ASSIGNEES,
v. M. J. BASSETT ET ALS.

(Case No. 2130,

1. HOMESTEAD—PLACE OF BUSINESS—RURAL HOME—EXEMPTIONS—The lot in a town exempt as a place of business from forced sale has no connection with the rural home, and the same family is not entitled to both exemptions.

2. SAME—PARTNERSHIP PROPERTY—PARTNERS—IMPLIED AGREEMENT—Partners may by agreement make that separate property which before belonged to the firm, and such an agreement may be implied from an acquiescence by the firm in such use of partnership property by one of the members as would withdraw his interest in it from the common burden.

3. PARTNERS' INTEREST IN PARTNERSHIP PROPERTY—SOLVENT FIRM—LIENS — A partner in a solvent firm may destinate his interest in partnership realty as a part of his homestead, and thus secure it from forced sale; and his occupying and using such property as his place of business, with the consent of the other members, is such use of it as will effect the destination of his interest therein as homestead, and deprive his creditors, his copartners, and himself, of the power, thereafter, to impose upon it any lien, except for purchase money or for improvements.

Appeal from Washington. Tried below before the Hon. W. H. Burkhart.

The appellants Swearingen and Garrett, plaintiffs below, brought this suit against B. H. Bassett, and Martha J. Bassett and her children, widow and children of Jefferson Bassett, deceased, to recover a lot and improvements in the city of Brenham, claimed by plaintiffs as assignees under a deed of assignment made by B. H. Bassett as surviving partner of the late firm of Bassett & Bassett, composed of himself and Jefferson Bassett, for the benefit of accepting creditors of the firm.

The facts, as disclosed by the plaintiffs' petition, are as follows: On May 25, 1885, the defendant B. H. Bassett and Jefferson Bassett were doing business as bankers in the city of Brenham, Washington county, under the firm name and style of Bassett & Bassett, and had been doing business as such ever since 1865. B. H. Bassett was at that time also a lawyer engaged in the active practice of his profession, and was associated with one John Sayles under the firm name of Sayles & Bassett, and had been so associated for more than twenty years, and is still so associated. When the firm of Bassett & Bassett began business B. H. Bassett and Jefferson Bassett owned in partnership a certain lot of land, situated in the city of Brenham, at the intersection of Main and Market streets, fronting twenty-six feet ten inches on Main street and running back seventy feet with Market street. During the year 1874 they built on the lot a two-story brick house, the lower story of which was fitted up and furnished with counters, railings, and a fire-proof vault built around a burglar-proof safe, so that the safe could not be removed without injury to the vault, and was occupied by Bassett & Bassett as a banking house in which to conduct and carry on their banking business; the upper or second story was fitted up as law offices and occupied by the law firm of Sayles & Bassett, who accounted to Bassett & Bassett for the rent and use thereof.

The lower story of the building was occupied by Bassett & Bassett exclusively as a banking house, and was so occupied until May 25, 1885, when Jefferson Bassett died; but it is now unoccupied, except by the law firm of Sayles & Bassett and B. H. Bassett, who, with the consent of M. J. Bassett, still use the vault and safe for the safe-keeping of their books of account and papers, and they so used the same during the life-time of Jefferson Bassett. The lot and building, improvements and fixtures, are of the estimated value of $6,000, and were owned by the firm of Bassett & Bassett, and were held and treated by them as firm assets and as part of the capital stock of the

bank.   On May 25, 1885, Jefferson Bassett, was the head of a family, which consisted of himself, his wife M. J. Bassett, and their children, Ida, Virginia, Eleanor and Gilmer Bassett; and he owned, in his individual right, and occupied with his family, as a residence and homestead, a lot in the city of Brenham, which was the community property of himself and wife, and that lot is still used and occupied as a homestead by his family.

On May 25, 1885, and on May 28, 1885, B. H. Bassett was also the head of a family, and owned, in his individual right, a farm in the country, about three miles from the city of Brenham, and entirely outside of the corporate limits of the city, comprising about two hundred and thirty acres of land, upon which he then resided and now resides, and for a long time prior thereto had resided, coming into the city daily to his office in the practice of his profession.   He had for a long time occupied and used the land as a place of residence and a homestead, occupying the dwelling house thereon, and cultivating and enjoying the fruits of the land.

On may 28, 1885, B. H. Bassett, for himself and the firm of Bassett & Bassett, made an assignment, in accordance with the statute, of all the property of himself and of the firm of Bassett & Bassett, except such as is exempt by law from forced sale, to appellants for the benefit of such of the creditors of himself and firm as would consent to accept their proportionate share of the property of B. H. Bassett and the firm of Bassett & Bassett, and discharge B. H. Bassett from their respective claims.

Appellants accepted the trust and qualified as required by law.

B. H. Bassett omitted from the schedule of assets filed by him two hundred acres of his homestead tract, and included therein the excess. He also withheld the bank building, lot and fixtures, and refused to yield possession thereof to the assignees.   B. H. Bassett and M. J. Bassett claim the bank building as a part of their respective homesteads.   B. H. Bassett claims for himself, as exempt from that assignment by reason of its being a part of his homestead, or his place of business, and by reason of its having been such on the day of his assignment, May 28, 1885, an undivided interest of one-half in the bank building; and M. J. Bassett claims for herself and her children, by reason of its having been, as his place of business, a part of the homestead of Jefferson Bassett on May 25, 1885, the day of his death, an undivided one-half interest in the bank building, all of which was stated by B. H. Bassett, in the deed of assignment, as a reason for withholding the same from his schedule of assets.

At the death of Jefferson Bassett, both B. H. Bassett and the firm

of Bassett & Bassett were insolvent. At the time of filing plaintiffs' petition there had been no administration on the estate of Jefferson Bassett, but he left a will in which M. J. Bassett was made sole devisee and legatee, and is named executrix. By the terms of the will, the administration of the estate is withdrawn from the courts, and the executrix is authorized to act without bond.

Plaintiffs claim, that, by reason of the deed of assignment and their acceptance and qualification, they became invested with the legal title to the lot and building, as well as the other property of Bassett & Bassett and of B. H. Bassett, in trust for the benefit of accepting creditors, to be administered under the statute, and are entitled to the possession of the premises, and to have their title quieted; that they are deprived of the rents of the premises by reason of their being out of possession thereof, and their title is clouded by the claim of the defendants, so that the property cannot be sold to advantage. They pray judgment for the possession of the premises, and that their title be quieted, etc.

The defendants demurred to the petition, and on October 22, 1885, judgment was rendered in their favor, sustaining the demurrer and dismissing the suit. From that judgment the plaintiffs have prosecuted this appeal.

*J. D. Swearingen* and *Garrett, Searcy & Bryan*, for appellants, that the partnership property of Bassett & Bassett formed a primary fund for the payment of the debts of the firm, and none of it would be exempt to either member, or to the family of either member, until such debts were paid, cited: Pond *v.* Kimball, 101 Mass. 105; Kingsley *v.* Kingsley, 39 Cal. 665; Russell *v.* Lennor, 39 Wis. 670; The State *v.* Spencer, 64 Mo. 355; Gaylor *v.* Imhoff, 26 Ohio St. 317; Thompson's Homesteads and Exemptions, sec. 196, and authorities cited; Note to State *v.* Spencer, *supra*, in 27 Am. Rep. 246; Note to Wolf *v.* Fleischacker, 63 Am. Dec. 122.

That as surviving partner of the firm of Bassett & Bassett, B. H. Bassett could assign the property, both real and personal, belonging to that firm, for the benefit of the creditors thereof, and that the title to the lot and premises passed to appellants by virtue of the assignment, they cited : Graves *v.* Hall, 32 Tex. 665; 5 Wait's Acts. and Def. 143.

*Sayles & Bassett*, for appellee, that the property was exempt and did not pass by the deed of assignment, cited : Const. art. 16, secs. 50, 51; R. S., 542; Wheatley *v.* Griffin, 60 Tex. 209; Inge *v.* Crain, 5 Tex. Law Rev. for Dec. 1, 1885, pp. 539, 541, 542; Story on Part., sec. 94; Parsons on Part., 373, 376, 377, and notes.

ROBERTSON, ASSOCIATE JUSTICE.—Every constitution of the state of Texas has provided for the exemption of a rural homestead of not more than two hundred acres of land. The changes that have been made in the organic law with respect to homesteads, have been confined exclusively to those in a town or city. At no time has one family been entitled to more than one homestead, and the distinction between that in the town and that in the country has been constantly preserved.

In the case of Ikin v. Olenick, 42 Tex. 195, this distinction was plainly stated, and whilst the convention which met shortly afterward, provided against the authority of that case in another point, there was no obliteration of the broad line between the two classes of homestead, marked in all previous constitutions, and definitely preserved in that now in force. The language of the constitution needs no construction. The lot in a town, exempt as a place of business, has no connection with the rural home. The same family is not entitled to both exemptions.

It is claimed, however, that the defendant B. H. Bassett, had the right of election between his two hundred acres in the country and his interest in the lot in controversy, and that the petition was demurrable for not tendering him this right. If such right exists, when the acts of the party have fixed to one property the homestead character and the incidental rights of the wife have become vested in it, which is at least doubtful (Rogers v. Ragland, 42 Tex. 422), it would be more properly a matter of defense. The exception urged to the petition, and sustained, raised no such issue. We conclude that the plaintiffs' petition was good as against the defendant B. H. Bassett, and the demurrer ought to have been overruled.

The validity of the deed of assignment made by B. H. Bassett is not questioned on this appeal, nor is its efficacy to pass the interest of Jefferson Bassett, deceased, in the lot in controversy, if that interest did not vest in his widow and children as a part of his urban homestead. On the other hand, it is conceded that the interest of Jefferson Bassett, deceased, is so protected, if a partner may have a homestead right in partnership realty superior to the demands of partnership creditors.

The question has been profoundly considered and ably discussed by the most learned courts in the United States, and conclusions have been reached, all along, from one to the other radical extreme. Mr. Thompson considers the weight of authority in favor of the negative and the better reason with the affirmative of the proposition. Thompson on Homesteads, etc., sec. 216. Many of the cases which

deny the right of a partner to claim his interest in partnership property as exempt, arise under laws which provide for setting aside to the judgment debtor so much personal property, and in these cases, the difficulty encountered and held to be insuperable, is to denude the property of the lien of the other partners. In these and other cases it is held, that each partner's interest is encumbered by over-ruling equities and liens, or is contingent upon the payment of partnership debts and the settlement of partnership accounts. In some of the cases the decision is based upon, or influenced by, a technical and, it seems to us, a narrow interpretation of the words of the statutes. Id. secs. 194, 216.

It could serve no useful purpose to consider these authorities in detail, as, in our view of the law, the question must be determined in this state in reference to our own peculiar and liberal system of exemptions.

The constitution of 1876 exempts the place of business, in a town or city, of the head of a family, as well as the residence. The use of a lot as a place of business is the most authentic destination of it as a part of the homestead that can be made. The appropriation of the premises for the very purpose for which they are placed beyond the reach of creditors, is an emphatic and undeniable invocation of the constitutional protection. When this act, the obvious effect of which is to place property on the list of exemptions and erase it from the schedule of available assets, is done by the consent of a partner, he may well be held to have relinquished his original right to charge it with future debts, or to encumber it in any way inconsistent with the new character he has permitted it to assume. And as the partners may by agreement make separate property what before belonged to the firm (Lindley on Partnership, p. 654 et seq.), such agreement might be implied from an acquiescence by the firm in such use of partnership property by one of the members as would withdraw his interest in it from the common burdens.

The petition does not disclose whether B. H. & Jefferson Bassett were equal partners or not. We may assume that they were, and that the title held by them to the lot in controversy was in the name of Bassett & Bassett. If so, the legal title to an undivided moiety was in Jefferson Bassett. Holmes v. Moon, 7 Heisk. 506 ; Tidd v. Rines, 2 N.W. Rep. 497.

Whilst the firm was solvent, his equitable was equal to his legal estate, and he had the right to sell his moiety, or to encumber it for his individual debts and purposes, and neither his partner nor the firm creditors, either at law or equity, could complain or prevent the

passage of full title to his vendee. Parsons on Part., star p. 377; Lindley on Part., 652, and note; Treadwell v. Williams, 9 Bosw. 649; Hardy v. Mitchell, 67 Ind. 485; 55 Miss. 597; 38 Ill. 418; 52 N. Y. 146.

Whilst the firm was solvent, he thus had the right to withdraw his interest in the lot from the partnership assets, and appropriate it to his own use. And we think, by the use he made of the lot by the the consent of his partner, he did segregate it from the partnership property, and make it a part of his constitutional home, if, at any time after the adoption of the constitution of 1876, the firm of Bassett & Bassett was solvent. His interest was free when the firm was solvent, and his use of that interest deprived him, his creditors and his partner, all, of the power thereafter to impose upon it any lien, except for purchase money or improvements. Inge v. Cain, Tyler Term, 1885.

The fact that Jefferson Bassett's interest in the house and lot was undivided would not prevent his interest from being exempt, as was decided by this court in the case of Lacy v. Clements, 51 Tex. 161, and other later cases, and it has also been held that the interest of the homestead claimant need not be in the fee or freehold, (Wheatley v. Griffin, 60 Tex. 209), and it is not perceived, in view of the purpose of the exemption, why it would not extend to any estate vendible under execution. Our statute provides that property, upon which the deceased husband has given a mortgage, may be set apart to the widow in lieu of exemptions. The lien which one partner has upon the interest of the other, is certainly not greater than that of a mortgagee. But when the firm is solvent the purpose of the lien does not exist—it is like an unsatisfied mortgage when the debt it secures has been paid. And if then the exemption attaches, subsequent insolvency cannot revive extinguished liens or create new ones.

When the constitution of 1876 was adopted, a large proportion—perhaps a majority—of the class to be benefited by the enlargement of the town homestead were known to be engaged in business as partners, and it could hardly have been contemplated by the framers of the original law that a partner, who owned the entire place of business of the firm, should hold it as exempt, while the lesser interest owned and used in the same way would not be protected.

The decisions and the statutes referred to illustrate the tendency of our laws. Right or wrong, wise or unwise, from the beginning, neither the people in convention, nor the legislature, nor the courts have taken any backward steps. Every change has extended the

protection, and these have been sufficiently frequent to make the progress of expansion a steady march. When the courts have hesitated or halted, they have been brought forward into line by the law-making power.

In the absence of definitive legislation to guide us, and in obedience to the progressive tendency adverted to, we hold, against the preponderance of authority, but with the preponderance of reason, that a partner in a solvent firm may destinate his interest in partnership realty as a part of his homestead, and thus secure it from forced sale; and, as the plaintiffs' petition showed such use of the lot in controversy by Jefferson Bassett as would effect its destination as homestead, at a time when the petition does not show that the firm of Bassett & Bassett was insolvent, the exception of the widow and children of Jefferson Bassett to the petition was properly sustained.

If the firm was continuously insolvent from 1876 down to the death of Jefferson Bassett, whether his interest would not still be exempt is a question, the decision of which is not necessary to the disposition of this appeal, and probably, of this case, and upon which, without the aid of counsel upon the particular point, we express no opinion.

For the error already pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 15, 1886.]