## M. J. FROST ET AL. v. WILLIAM WOLF ET AL.

No. 6507.

1. **Notarial Copy of a Conveyance Made in Louisiana.**—A notarial copy of a conveyance of land in Texas, and made before a notary public in the State of Louisiana in accordance with the form and mode usual in that State, the original being entered in the notary's book and signed by the parties and the notary, although proved and recorded in the county where the land lies, is not admissible as a recorded instrument.

2. **Same—Examined Copy.**—The admission of a notarial copy, though error, was immaterial when there was in evidence an examined copy of the original conveyance, with proof of the execution of the original upon the record of the notary.

3. **Deed to Land Without Seal.**—Prior to the Act of the Legislature dispensing with the use of seals to private instruments, such unsealed instrument, in form a deed, conveyed the equitable title to lands therein sought to be conveyed, although the legal title may not have passed.

4. **Deed to Partnership Firm.**—It may be conceded that at law a deed made to or by a partnership in the firm name alone would not pass title to land, but such is not the rule in equity.

5. **Case in Judgment.**—An examined copy of a conveyance to land in Texas made before a notary in Louisiana, with proof of the execution of the original, purporting to convey land therein described in Texas to a firm, followed by proof of the names of the individuals composing the firm, with the payment of the purchase money, *held* to prove a conveyance of the land.

6. **Power of Partner to Convey Land—Presumption.**—After the lapse of more than thirty years after a deed by one member of a firm purporting to act for the firm in making a deed conveying lands of the firm upon consideration, the power to act will be presumed.

7. **Partner May Convey Equitable Interest of Firm.**—If property stands in

the name of a firm, one partner in that name may convey at least an equitable title to it if he has authority at the time his conveyance was made, or his act may be ratified by a subsequent parol consent.

8. **Ancient Instrument.**—Where a recorded instrument is offered in evidence, and its age, etc., render it admissible as an ancient document, it is immaterial that its proof or acknowledgment was insufficient to admit it to record.

9. **Stale Demand.**—Aiken in 1839 in writing conveyed to Frost an interest in a land certificate in consideration that Frost locate the certificate and pay office fees, etc., with power to have his interest patented to himself. January, 1847, the land was patented to Aiken, and in February, 1847, he sold it, delivering the patent to his vendee. Frost died in 1866. Neither he nor his representatives paid taxes on the land or asserted any claim until this suit (November 19, 1885). *Held:*

1. That suit for specific performance would be barred had it been against Aiken.

2. That the conveyance, February 9, 1847, by Aiken, with the patent to Wilbur & Ellis, vendors of defendants, upon a money consideration paid, although a quit-claim deed and only conveying an equitable title, the defendants holding under Wilbur & Ellis could plead that the demand under Frost was stale.

3. The defendants showing the better title, although but an equitable title, were entitled to recover.

10. **Equitable Title.**—It is only where the equities are equal that the rule obtains that priority of time gives the better title. See facts.

11. **Maxim.**—Equity aids the diligent, not those who slumber upon their rights. See illustration.

12. **Failure to Answer Cross-Interrogatories.**—Objections to depositions were overruled. The objections were based upon the failure of the witness to answer cross-interrogatories. *Held,* that the error was immaterial, since no appropriate answers to the cross-interrogatories could have altered the result of the trial.

APPEAL from Williamson. Tried below before Hon. A. S. Walker. The opinion gives a statement.

*A. S. Fisher* and *T. B. Cochran,* for appellants. — 1. In conveyance of land the law of the State where it is located obtains. In 1847 the civil law had been supplanted by the common law, and the statute of February 5, 1840, had prescribed the requisites of a deed conveying land in this State. This statute provides "that no estate of inheritance or freehold or for a term of more than four years in lands and tenements shall be conveyed from one to another, unless the conveyance be declared by writing sealed and delivered." No instrument lacking either of these essentials could pass the legal title. Act of Feb. 5, 1840, Hart. Dig., art. 167; Barnett v. Pool, 23 Texas, 517; Tied. on Real Prop., sec. 808; Story on Con. of Laws, secs. 828, 829, 835–837; United States v. Crosby, 7 Cranch, 115; Polk v. Wendell, 9 Cranch, 87; Preston v. Browder, 1 Wheat., 115; Robinson v. Campbell, 3 Wheat., 212; Hatch v. Powell, 6 Wheat., 119; Clark v. Graham, 6 Wheat., 577; Kerr v. Moon, 9 Wheat., 565; McCormick v. Sullivant, 10 Wheat., 192; United States v. Fox, 94 U. S., 315; Brine v. Ins. Co., 6 Otto, 627.

2. A mercantile partnership can not take and hold the legal title to

real estate by conveyance to the firm in firm name, not giving names of individual members.

3. If it is competent for the firm to acquire title under such an instrument as that in evidence, all the members should act in the purchase and sale. No single member would have authority to bind the firm by such a contract.

4. If the original instrument was offered it must have been proved under common law rules, for it had never been properly recorded. A copy from a notary's record in Louisiana can not be legally recorded in this State. The copy introduced had no standing whatever, even if the original would be admissible upon proper proof. It was not a copy of an instrument duly recorded within the meaning of the law. Hutchins v. Bacon, 46 Texas, 415; Wood v. Welder, 42 Texas, 408.

5. When two partners own land jointly it is incompetent for either to sell the firm estate therein, and a conveyance purporting to sell the whole interest of such partnership and executed by one partner is inoperative, and a party receiving same is chargeable with notice of its defects. It can not pass the interest of the firm, because the party executing it is not authorized to do so. It can not pass the interest of the party not acting, for it is not his deed. It can not pass the title of the acting partner, because (1) it does not purport to do so, (2) it does not define the extent of his interest, and (3) it is not signed by him in his individual right.

6. The doctrine of innocent purchaser does not apply in a controversy between equities, but in such cases the courts do exact justice, and he who is in other respects equal and is first in time is best in right. Johnson v. Newman, 43 Texas, 642.

7. Where a deed is only a sale or release of the grantor's interest, and not a sale of the land, the grantee can not invoke the doctrine of innocent purchaser. Rogers v. Burchard, 34 Texas, 453; Harrison v. Boring, 44 Texas, 255; Taylor v. Harrison, 47 Texas, 454; Milam County v. Bateman, 54 Texas, 153; Richardson v. Levi, 67 Texas, 359; May v. Le Claire, 11 Wall., 217; Villa v. Rodriquez, 12 Wall., 323.

8. The doctrine of stale demand can not be invoked in a contest between equities. The doctrine that the holding of a legal title adversely to an equity will defeat the equity is in controversies between it and the legal title.

9. The transfer of a one-third interest in the Lewis certificate gave S. M. Frost a like interest in the land located thereunder. The issuance of the patent to Aiken, the owner of the larger interest, was not adverse to Frost. Aiken, under the patent, was the holder of the legal title as trustee by estoppel of Frost's one-third. Laches will not be attributed until Aiken should by overt act repudiate the trust, and notice of this repudiation must be legally chargeable to Frost. Aiken was trustee by estoppel. Carlisle v. Hart, 27 Texas, 353; Johnson v. Newman, 43 Texas,

642;  Keyes v. Railway, 50 Texas, 169;  Hermann v. Reynolds, 52 Texas, 391;  Hollis v. Dashiell, 52 Texas, 200;  League v. Rogan, 59 Texas, 427;  Burkett v. Scarborough, 59 Texas, 495.

*A. W. Terrell* and *T. P. Hughes,* for appellees. — 1.  Appellants only show an executory contract that long before suit was brought had become dormant and stale.  Dull v. Blum, 68 Texas, 299;  Watson v. Inman, 23 Texas, 531;  De Cordova v. Smith, 9 Texas, 129;  Glasscock v. Nelson, 26 Texas, 150;  Flemming v. Reed, 37 Texas, 152.

2.  Appellants claiming under an executory contract must prove a compliance with its terms and a consideration.  Though the endorsement on the certificate expresses the reception of a valuable consideration, it is to be construed with the other contemporaneous instrument between same parties about same matter, both making but one contract, and taken together show Frost had to do certain things as the consideration that were not proved.  Wilson v. Simpson, 68 Texas, 308.

3.  Aiken having the legal title to the land vested in him by having the patent issued in his name and then selling to Wilbur & Ellis soon thereafter, whether it passed the legal or equitable title to said firm, will bar the appellants' right to recover.  The policy of the law is to protect innocent purchasers against secret legal as well as equitable titles.  Edwards v. Brown, 68 Texas, 337;  Lewis v. Johnson, 68 Texas, 449.

STAYTON, Chief Justice.—This is an action of trespass to try title to one-third of two-thirds of a league and labor of land patented to Herman Aiken on January 5, 1847.  Plaintiffs are the widow of Samuel Frost, to whom he was married in 1861, and their children, and his children by a former wife.  The foundation of their claim is a transfer of a one-third interest in the certificate by virtue of which the land was granted, made to Frost by Aiken on February 21, 1839.  That transfer was made by an endorsement on the certificate and by a more formal conveyance, both of the same date.  The consideration for the conveyance evidently was the services of Frost to be rendered in locating and surveying the land and the payment of such expenses as might be necessary.

The instrument contains the following language:  "Know all men by these presents, that I, Herman Aiken, for and in consideration of the sum of ——— dollars, as well as the expenses on the following certificate, as well as Samuel M. Frost's services selecting and locating, I have this day bargained, sold, and conveyed  *  *  *  one-third;  *  *  *  and on his returning the field notes of said survey and the surveyor's certificate under oath that he has divided the above claim equally and equitably under oath to the surveyor of the county in which said land may be made, and then authorize the proper officer or officers to make to him a good and sufficient title or patent for the same," etc.

This instrument thus evidences an intention that Frost might locate his interest separately and have patent therefor directly to himself. The land was not surveyed until sometime in 1846, when it was located in one body, which at date before named was patented to Aiken. There is no evidence that Frost located the land or incurred any expense in procuring the title, and this action was not brought until November 19, 1885.

Samuel Frost died in 1866, and although administration was had upon his estate no claim was asserted to the land in controversy by him or his heirs until this action was brought.

On February 9, 1847, Herman Aiken conveyed the land to Wilbur & Ellis, he then having possession of and delivering to his vendees the patent to the land. Appellees claim through that conveyance, to which, however, appellants make several objections.

Defendants pleaded the defenses usual in this class of cases, and further alleged that appellants' claim was barred by the statutes of limitation, and that such time had elapsed as to make it a stale claim.

The cause was tried without a jury, and, without passing on the defences of limitation, the court held that appellees showed title and that appellants' claim was stale and thus barred. The evidence of right under which appellants claim was never recorded in the county in which the land is situated.

The conveyance from Aiken to Wilbur & Ellis purports to have been made to them as a firm and in the firm name, and it was made before a notary public in the State of Louisiana, in accordance with the form and mode usual in that State, the original being entered in the notary's book, signed by him, by Aiken, and Wilbur, who represented the firm of Wilbur & Ellis, as well as by two witnessess.

A copy of that instrument, as is usual in that State duly certified by the notary, was delivered to Wilbur & Ellis. That paper after having been proved up, as would perhaps have been sufficient to admit it to record had it not been a copy, was recorded in the county in which the land was situated, and on the trial that paper was admitted in evidence, over the objections of appellant, presumably as a recorded instrument.

That ruling we think was error, for the law does not provide for the record of such copies. This ruling, however, is immaterial if an examined copy taken from the notary's record subsequently introduced was properly admitted.

The objections to this examined copy were twofold. It was insisted that the execution of the original from which the copy was taken was not sufficiently established.

The testimony of three witnesses who had examined the original on the notary's record showed that the copy offered in evidence was a true copy of that; that the notary and one of the subscribing witnesses were dead,

and their evidence leaves but little if any doubt that the other witness was dead.

Their evidence also showed that they were familiar with the handwriting of the notary and witnesses, and that the signatures appearing to the original on the notary's record were their genuine signatures.

One of these witnesses was Wilbur, of the firm of Wilbur & Ellis, who testified not only to the genuineness of their signatures, but to the further fact that he saw Aiken and the other persons whose names thereon appear sign it, and that he signed it.

The execution of the instrument on the notary's record being thus shown, and the copy offered being shown to be a true copy of that record, we are of opinion that it was properly admitted, for the original being a record of another State could not be produced.

It was urged, however, if the objections noticed were not tenable, that the copy should have been excluded because the original was not sealed, as conveyances of land were then required to be by the laws of this State, and because it purported to be a conveyance to a firm, and not to the individuals composing it.

It may be that the unsealed instrument did not convey to Wilbur & Ellis the legal title to the land, but it can not be held that it did not convey to them the equitable title, unless it be the law that a conveyance made to a partnership in the firm name is a nullity. Miller v. Alexander, 8 Texas, 37; Holman v. Criswell, 13 Texas, 38; Martin v. Weyman, 26 Texas, 466; Tom v. Sayers, 64 Texas, 342; Wadsworth v. Wendell, 5 Johns. Ch., 224; McCaleb v. Pradat, 25 Miss., 258; Drutzer v. Baker, 60 Wis., 180; Dev. on Deeds, 246; Pome. Eq., 383.

Payment of consideration of $2000 for this and other lands was shown.

The conveyance, as before said, purports to be to "Wilbur & Ellis" as a firm, and it is shown who composed that firm, and that both members of it were present and consenting to the conveyance thus made.

It may be conceded that at law a deed made to or by a partnership in the firm name, the full name of neither partner being given, would not pass title to the land, but such is not the rule in equity. Baldwin v. Richardson, 33 Texas, 16; Lowery v. Drew, 18 Texas, 786; Byam v. Bickford, 140 Mass., 31; Tidd v. Rines, 26 Minn., 211; Beman v. Whitney, 20 Me., 413, Lindsay v. Hoke, 20 Ala., 543; Slaughter v. Swift, 67 Ala., 494; Lumber Co. v. Ashworth, 26 Kans., 212; Moore v. Carpenter, 19 Vt., 615; Hunter v. Martin, 2 Rich., 541; Printish Bros. v. Turner, 65 Ga., 71; Bates on Part., 296.

We are of opinion that the examined and proved copy was properly admitted in evidence, and as it was the same as the notarial copy introduced no injury resulted from the improper admission of the latter, there being no question of notice to be affected by the registration of that paper.

On December 1, 1847, Wilbur & Ellis, in the firm name but acting

through Wilbur, conveyed the land to E. A. Bridge, since deceased, and defendants claim through deeds made by the widow and only son of Bridge, of dates running from 1878 to 1883.

No actual possession was taken of the land until 1879, and none of defendants had actual notice of plaintiffs' claim until this action was brought.

Some of the defendants had paid all of the purchase money and others only a part when this action was instituted.

The deed from Wilbur & Ellis recites that "I, A. C. Wilbur, of the firm in this city of Wilbur & Ellis, and herein representing said firm of and in the said city of New Orleans, for the consideration of twelve hundred dollars to us paid by E. A. Bridge, also of New Orleans, have granted, bargained, sold, and released," etc. It was signed in the firm name and acknowledged by Wilbur for the firm before a commissioner of deeds for Texas resident in the State of Louisiana.

It is urged that the court erred in admitting in evidence that deed. The objections to it were:

"1.   It purported to convey the title of Wilbur & Ellis and was signed by only one member of the firm.

"2.   It was not signed by the individuals composing the firm, and did not disclose any authority for the member signing to act for the firm.

"3.   It does not disclose the interest of each member of the firm.

"4.   It was not properly authenticated for record nor duly recorded."

While the authority of Wilbur, except such as he may have possessed as partner, is not shown, after the lapse of more than thirty years the authority must be presumed to have existed. In this view it is unimportant whether the partnership was one for the purpose of dealing in real estate, the property strictly partnership assets, or held by the members of the firm as tenants in common.

If property stands in the name of a firm, one partner in that name may convey at least an equitable title to it if he has authority at the time the conveyance is made, or his act may be ratified by subsequent parol consent, and the writer sees no reason why if he has authority the legal title should not be held to pass by such a conveyance. Lowery v. Drew, 18 Texas, 786; Baldwin v. Richardson, 33 Texas, 16; Pime v. Weber, 47 Ill., 44; Lawrence v. Taylor, 5 Hill, 109; Herbert v. Hanrick, 16 Ala., 581; Grady v. Robinson, 28 Ala., 289; Gunter v. Williams, 40 Ala., 561; Darst v. Roth, 4 Wash., 471; Wilson v. Hunter, 14 Wis., 683; Pike v. Bacon, 21 Me., 280; Dev. on Deeds, 110, and citations; Bates on Part., 292, 416, and citations.

The same presumptions arise from lapse of time as to power of a partner to bind the firm by a deed which he assumes the right to make in its name as arise in other cases in which one person has assumed to execute a deed in the name of another. That the deed may not have been properly authenticated for record is a matter of no consequence in so far as the ques-

tion of its admissibility is concerned, for it was admissible as an ancient instrument.

It is contended that for reasons before noticed if the deed to Wilbur & Ellis conveyed any title it was one equitable in character, and further that it was only a quit claim deed, and that the claims of both parties being only equitable, that of appellant being the older one ought to prevail. It may be conceded that the deed to Wilbur & Ellis was only a quit-claim and that the title that passed by it was equitable, but it can not be denied that it passes all the right Aiken had when he executed it or would now have if he had not conveyed.

Under the conveyance of an interest in the land certificate through which appellants claim, how would the matter stand had Aiken never conveyed the land and were this action against him? That Frost was to perform services and expend money as the consideration for the conveyance can not well be controverted, and in the absence of evidence showing that he did these things a court of equity would not enforce the claim now urged even if it were not stale. The first step taken to enforce the claim was taken more than forty-five years after the contract was made, and more than thirty-seven years elapsed after Aiken took patent to himself before the claim was asserted.

The receipt of the patent in his own name by Aiken was an act hostile to the claim now asserted, and this was done about nineteen years before the death of Samuel Frost, and thirty-eight years elapsed before this action was brought, during which no claim was asserted.

Frost during his lifetime paid no taxes, nor did those interested in his estate do so, or even inventory the land as a part of his estate.

The presumption under such facts ought to be that the contract between Aiken and Frost was in some manner rescinded, or that the latter did nothing to entitle him to any part of the land, and this presents just the case in which the defense of stale claim should be recognized; and the fact that those holding under Aiken may not have a complete legal title furnishes no reason why the same defense should not avail them.

Wilbur & Ellis bought from Aiken soon after the patent issued; that was in possession of Aiken and furnished the highest evidence of right; was by him exhibited, made a part of the conveyance, and delivered to his vendees, who paid valuable consideration for the land without any actual notice of adverse claim.

If Frost was equitably the owner of a part of the land he had it in his power to have had so much patented to himself, and it was negligence to permit Aiken to go before the world and upon the market with the highest evidence that he was the owner of that which appellants now claim. Can one who has thus been negligent, when he must have known that this might operate to the injury of others, claim that he has equal equity with one

who purchased from another holding evidence of title superior to all other persons?

Wilbur & Ellis conveyed to Bridge, and his widow and only heir conveyed to defendants more than thirty years after the patent issued; and during all this time neither appellants nor their ancestor took any steps to assert their claim, when they must have known that their silence was likely to lead to the injury of persons who had no means of acquiring knowledge of their secreted claim. Can they now be said to have a claim which so commends itself to the conscience of a court of equity or to a common sense of justice as does the claim of those who, relying upon the patent to Aiken, have purchased upon the faith of that, unassailed for so long a period, being the superior title to all others? If not, then they have not a right which ought to be given priority, neither holding the legal title.

A distinguished English judge in commenting on the maxim on which appellants rely, in a case in principle much like the present, well said that "as between persons having only equitable interests, if their equities are *in all other respects* equal, priority of time gives the better equity. * * * But in order to ascertain and illustrate the meaning of the rule itself, I think the meaning is this: that in a contest between persons having only equitable interests, priority of time is the ground of preference last resorted to; i. e., that a court of equity will not prefer the one to the other on the mere ground of priority of time until it finds upon an examination of their relative merits that there is no other sufficient ground of preference between them, or in other words that their equities are in all other respects equal; and that if the one has on other grounds a better equity than the other, priority of time is immaterial.

"In examining into the relative merits (or equities) of two parties having adverse equitable interests, the points to which the court must direct its attention are obviously these: the nature and condition of their respective equitable interests, the circumstances and manner of their acquisition, and the whole conduct of each party with respect thereto. And in examining into these points it must apply the test, not of any technical rule or any rule of partial application, but the same broad principles of right and justice which a court of equity applies universally in deciding upon contested rights." Rice v. Rice, 2 Drew, 78.

There is another rule in equity which finds application in this case, which is that equity aids the vigilant, and not those who slumber on their rights.

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence," was the utterance of a distinguished English chancellor.

If appellants or their ancestor ever had a right which might have been enforced against Aiken holding a patent, it was one equitable in character, and having slept upon it so long ought not now to be heard to assert it, even against the subsequently acquired equity of the defendants.

The cross-interrogatories to Wilbur which were not answered by him related mostly to and called for his opinion as to the effect of instruments in evidence to which appellants were not entitled; and had all others been by him answered in a manner most favorable to them such answers could not have changed the result, hence no injury resulted to appellants from the ruling of the court complained of in the fifth assignment.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered May 27, 1890.