### W. N. Wiggins v. W. A. Blackshear et al.

#### No. 126.

**1. Partnership, Relation to its Members.**

For partnership debts the members of the firm are liable jointly and severally, and the law recognizes no personality in the partnership other than that of the persons who compose it........................ 668

**2. Right of Member as to Payment of Firm Debts.**

It is the right of a member of a partnership to have the common property applied to the firm debts; other partners can not deprive him of such right.................................................... 668

**3. Creditors Have no Lien.**

That a partnership creditor has no specific lien, either legal or equitable, upon partnership assets, any more than any individual creditor has upon the estate of his debtor, is so firmly established that citation of authority in support of the proposition is useless ................. 669

**4. Administration of Assets by Courts.**

When the property of a partnership passes into the custody of a court for administration, as in case of bankruptcy or assignment made by an insolvent firm, then the court will administer it as was the right of the several partners to have it administered while controlled by themselves ........................................................ 669

**5. Parties Selling Out—Rights.**

One partner may in good faith convey his interest in the firm assets to another, and thereby all his equities in relation to the application of firm assets to its liabilities are lost ............... ......... ....... 670

·6. Dissolution, Effect of.

    Upon a dissolution of an insolvent firm the members could lawfully par-
tition the assets among themselves in proportion to the several shares.
Such act of itself is not fraudulent, for the property in the hands of
each partner would be subject, as before, to the firm debts........... 670

·7. Case in Judgment—Mortgage by Firm to Secure Individual
    Debts.

    A firm of two members equally interested had assets, one-half of which
exceeded the individual debt of either member. Being pressed for
funds to make payment of maturing debts, the firm executed a deed of
trust securing their individual debts by preference, the other creditors
to share equally. The individual debts were for funds which went
into the firm business. *Held*, that the mortgage was valid; the firm
had the right when fraud was negatived..... ....................... 671

ERROR to Court of Civil Appeals for Third District, in an appeal from
Mason County.   (24 S.W. 918)

*D. W. Doom*, for plaintiff in error —The creditors of the partnership
·could only claim priority over the individual ·creditors, by virtue of the
right of the individual members of the firm to claim such priority for
·them; and the individual members of the firm having conveyed the
property and directed the application of the proceeds, first to the pay-
ment of the individual debts of the members of the firm, the firm credit-
·ors can not complain.   White v. Parish, 20 Texas, 688; W,eaver v.
Ashcroft, 50 Texas, 427; Swearingen v. Bassett, 65 Texas, 267; Case v.
Beauregard, 99 U. S. 119; Bank v. Furness, 114 U. S., 376; Schmidlapp
v. Currie, 55 Miss., 597; Sigler v. Knox County Bank, 8 Ohio St., 511;
Woodmansie v. Holcomb, 34 Kan., 35; Schaeffer v. Fithian, 17 Ind., 463;
Stokes v. Stevens, 40 Cal., 391; City of Maquoketa v. Willey, 35 Iowa,
323; McDonald v. Beach, 2 Blackf., 55; Jones v. Lusk, 2 Metc., 356;
Bank v. Sprague, 20 N. J. Eq., 13; Veal v. Keely, 86 Ga., 130; Fishers
v. Syfers, 109 Ind., 514; Wilcox v. Kellogg, 11 Ohio, 394; Allen v. Cen-
ter, 21 Conn., 730; Rice v. Barnard, 20 Vt., 479; Potts v. Blackwell, 4
Jones' Eq., 58; Whiting v. Dean, 5 N. H., 249; Reyburn v. Mitchell, 106
Mo., 365.

*J. H. Banton*, for defendants in error.—1. The firm of J. T. Wiggins
·& Co. was insolvent at the time of the assignment, and in such case, in
paying the private debts of one or more of its members, it was paying
what it was not liable for in law, equity, or morals, and was, in effect,
giving away its property; and such conveyance, no bona fide rights in-
·tervening, is fraudulent and void as to existing creditors, if they are
prejudiced thereby. Hence it follows that an assignment by an insolvent
firm for the benefit of creditors, preferring individual creditors, is fraud-
ulent, at least to that extent.

2. The preference of the individual creditors of the members of the firm of J. T. Wiggins & Co., to the extent that it would have consumed all of the assets of the firm and of the individual members thereof to pay such preferred debts, though made by the consent of all the members of the firm, was a fraud upon the firm creditors, and was, in effect, to hinder and delay them; and the fact that the partners consented, or more properly colluded, to thus defraud the creditors of the firm does not affect the case, or in any way validate the act.   De Causey v. Bailey, 57 Texas, 665; Converse v. McKee, 14 Texas, 30; Rogers v. Nichols, 20 Texas, 719; Warren v. Wallis, 38 Texas, 228; Wilson v. Robertson, 21 N. Y., 587; Menagh v. Whitwell, 52 N. Y., 146; Phillips v. Ames, 5 Allen, 183; Patterson v. Seaton, 70 Iowa, 689; Brecher v. Fox, 1 Fed. Rep., 273; Goodbar v. Cary, 16 Fed. Rep., 317; Bates' "Law of Partnership," sec. 566; Burr. on Ass., sec. 210; Keith v. Fink, 47 Ill., 272.

STAYTON, CHIEF JUSTICE.—This is an action by W. N. Wiggins against the persons composing the firm of Blackshear & Co. and P. C. Baird, sheriff, to recover the value of property seized by the latter under attachment sued out by Blackshear & Co. in an action brought by them against J. T. Wiggins & Co., a firm composed of J. T. Wiggins and S. J. Redman.

J. T. Wiggins & Co. owned a stock of drugs, paints, oils, etc., of the value of $1310, besides accounts and claims amounting to $800.

J. T. Wiggins was indebted to W. N. Wiggins in the sum of $445, exclusive of some interest, and S. J. Redman was indebted to F. W. Henderson in the sum of $594.   These were not partnership debts, but the money for which they were contracted seems to have been used in the partnership business.   The firm was indebted in the sum of $871.63, of which $292.71 was due to Blackshear & Co.

On December 24, 1889, Wiggins & Co. were unable to raise money to meet their maturing indebtedness, and in that sense the firm was insolvent; but it does not appear what property the members of the firm owned at that time.   On that day they conveyed to W. N. Wiggins, in trust, all of the partnership property, with power to sell it, collect the debts, and from the proceeds, after paying expenses, to pay, first, the sums due from J. T. Wiggins to W. N. Wiggins and the sum due from Redman to Henderson; second, the sums due to partnership creditors, in full or pro rata, without preferences between them, any property remaining after these things were done to be returned to J. T. Wiggins & Co.

Before the trust deed was executed, and with view to make them partnership creditors, the notes due from J. T. Wiggins to W. N. Wiggins and from S. J. Redman to Henderson, were endorsed by the firm of J. T. Wiggins & Co., with knowledge of these creditors.

W. N. Wiggins took possession of the property at once, in accordance

with the trust deed; whereupon Blackshear & Co. brought suit for the sum due them, and seized the property under attachment, and it was afterwards sold as perishable property.

That seizure was the basis of this action, and the question arises, whether Wiggins & Co. could thus, by way of mortgage, appropriate their partnership property to payment of individual debts of members of the firm.

In the decision of this question the fact that the money borrowed by the persons comprising the firm, for which they were only severally liable, may have been used in the purchase of property that became the property of the firm, may and will be considered in so far as it shows that the mortgage given to secure sums so borrowed and used was made without fraudulent intent.

That the individual debts so secured were real, and the money obtained through their creation used in the purchase of property which became partnership property, takes from the case all question of fraud, and leaves the simple question, whether the members of the partnership, circumstanced as was the firm of Wiggins & Co., may lawfully mortgage partnership property to secure debts of the several members of the firm for which the partnership is not liable.

There are two theories on which it is sometimes claimed that creditors of a partnership have right to have its assets applied to payment of their claims in preference to creditors of the persons composing the firm.

The first of these is, that partnership property is presumed to have been obtained through credits given to the firm, and that for this reason partnership creditors ought to be preferred in the distribution of its assets. But if courts could enter into such inquiries, the facts of this case would defeat the right to preference on such a ground; for the partnership property in question was doubtless largely acquired with money borrowed by the several persons composing the firm, from W. N. Wiggins and F. W. Henderson, to whom preference was given in the mortgage.

The other theory is, that a partnership ought to be treated as a person, in contradistinction to the persons composing it, and therefore its property ought to be first subject to the payment of partnership debts, without reference to the will of the partners. But a partnership can not be so considered, simply because such is not its nature.

For partnership debts the members of the firm are jointly and severally liable, and the law recognizes no personality in a partnership other than that of the persons who compose it.

As every partner is liable for the debts of his firm, and owns its property in common with the other partners, it is his right to have the common property applied to the payment of partnership debts; and all the other partners, without his consent, can not take this right from him.

This right is sometimes said to give every partner an equitable lien on

firm assets, as well to secure him against several liability for firm debts, as to secure to him his proper share of the firm assets on dissolution; but creditors of a partnership have no lien or other claim on partnership assets which can prevent the members of the firm from disposing of them in any manner or to whomsoever they may deem proper, provided that such disposition is not fraudulent.

That a partnership creditor has no specific lien, either legal or equitable, upon partnership assets, any more than any individual creditor has upon the estate of his debtor, is so firmly established that citation of authority in support of the proposition is useless; but they may acquire liens by contract or through the process of a court by which other creditors may acquire liens on specific property.

The rule is thus well stated: "A creditor of a partnership has, as a general rule, no direct lien upon the partnership property until he acquires it by legal process—that is, by the levy of an attachment or of an execution. His indirect or quasi lien is derived from the lien or equity of the individual partners. It is practically a subrogation to the lien of the individual partners. If the partners are not themselves in a condition to enforce an equitable lien upon the partnership property, the creditors of the partnership can not enforce a lien derived from them or from one of them. The equity of the partnership creditor continues so long as the equity of the individual partner continues, and no longer." Jones on Liens, 788.

When, however, the property of a partnership passes into the custody of a court for administration, as in cases of bankruptcy or assignment made by an insolvent firm, then the court will administer it as was the right of the several partners to have it administered while controlled by themselves.

In such cases the court's action is based as fully upon the rights of the partners as between themselves, as upon the rights of creditors; and when the result of the proceeding is the discharge of partners from further liability, then the first theory before referred to may have been given weight in establishing an administrative rule in such cases.

In accordance with the general rule before stated, it has been steadily held, that one partner may in good faith convey his interest in partnership assets to another, and that thereby all equities of such partner and of all partnership creditors to subject such assets first to payment of their claims is thereby lost. White v. Parish, 20 Texas, 689; Rogers v. Nichols, 20 Texas, 719; Weaver v. Ashcroft, 50 Texas, 442; Swearingen v. Bassett, 65 Texas, 272; Stansell v. Fleming, 81 Texas, 298.

It has been held, that one member of an insolvent partnership, all the members being insolvent, may transfer in good faith, with the concurrence of the other partners, his interest in the partnership property to an individual creditor, and that after this a simple contract creditor can not

maintain a bill to subject the property to payment of a debt due to him by the firm. Case v. Beauregard, 99 U. S., 119.

As priority of right of partnership creditors over creditors of the individual members of the firm rests on the rights of the partners themselves, can there be any doubt, if an insolvent partnership be dissolved by mutual agreement of its members, and its property be divided between them in accordance with their several interests, that partnership creditors would lose all right to priority of payment out of property so distributed?

Members of a partnership having thus voluntarily surrendered their rights so to have the assets appropriated, each would hold property received in distribution in his separate right, subject alike, however, to the claims of all creditors, both individual and partnership.

Such a transaction would not be fraudulent as to either class of creditors, unless some further fact intervened; for the property in the hands of each partner would be subject, as before, to the claims of partnership creditors as well as others.

In the case before us the inference is that the members of the firm of Wiggins & Co. owned equal shares in the partnership property; and if they had conveyed or mortgaged the entire property to pay or secure the debt of one of the partners, for which neither the firm nor the other partner was liable, then, on the plainest principles of right, it ought to be held that such a conveyance or mortgage was fraudulent as to firm creditors and as to creditors of the member of the firm not bound for the debt, for to the extent of his interest in the property the conveyance would be voluntary.

Such, however, is not the case we have before us.

The value of the firm assets, exclusive of accounts and claims, which amounted to $800, was shown to be $1310, and one-half of this was more than the individual indebtedness of either partner secured by the mortgage.

As partnership creditors had no lien on firm property, no reason is perceived why each member might not lawfully permit the other to pay his individual debt out of his own share of the partnership property; and the same reasons which would make lawful such a payment would give validity to a mortgage given by both partners to secure debts of members of the firm.

Conveyances or mortgages given under such circumstances and for such purposes are not voluntary, and therefore fraudulent as to partnership creditors.

If the sums each partner owed individually had been equal, no one would doubt their perfect right, under agreement between themselves, to pay or secure their several debts with partnership assets; for this would be simply using by each one what belonged to him for a lawful purpose.

That their several debts were not exactly equal is a matter of no im-

portance, in view of the fact that the share of each in firm assets exceeded in value the individual debt of each secured by the mortgage.

The rule applicable to partnership property and creditors when in the hands of a surviving partner, or when in course of administration in bankruptcy, or under assignment for benefit of creditors, was applied in the District Court and in the Court of Civil Appeals; but it is believed to be inapplicable in cases like this, in which, although the firm be insolvent, partners by mutual agreement may, within the limit heretofore noticed, prefer individual creditors, if this be done in good faith.

This cause was tried without a jury, and under the findings of the Court of Civil Appeals judgment will be here rendered in favor of the plaintiff against all defendants for the sum of $1310, with interest thereon from January 2, 1890, at the rate of 8 per cent per annum, together with all costs incurred in this litigation.

It is so ordered.

*Reversed and rendered.*

Delivered May 10, 1894.