TOM et al. v. FIRST NAT. BANK OF
MIDLAND.

No. 3460.

Court of Civil Appeals of Texas. El Paso.
March 11, 1937.

Rehearing Denied April 1, 1937.
Amended Rehearing Denied April 8, 1937.

Turney, Burges, Culwell & Pollard, of El Paso, on the brief; Stubbeman & Sealy, of Midland, McCune, Caldwell & Downing, of Kansas City, Mo., Sam McCollum, of Brady, and Carl Runge, of Mason, for appellants.

Samuels, Foster, Brown & McGee, of Ft. Worth, and Whitaker & Perkins, of Midland, for appellee.

HIGGINS, Justice (after stating the case as above).

Appellants in their brief suggests no reason for reversal of the judgment against the executrix.

The first of the two propositions submitted reads: "As against the rights of the other partners, a mortgage given by one partner to secure his individual indebtedness cannot be enforced even though the creditor did not

know at the time he took the mortgage that such property belonged to the partnership, unless such partners are estopped to set up their rights; especially is this true when such mortgage was given to secure a pre-existing debt of the mortgagor."

■ Under the view we have of the case the thought suggested by the last sentence in the proposition is immaterial. If it should be regarded as material, then it may be briefly disposed of by reference to the rule· announced in Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S.W. 823, that the extension of time of payment of a pre-existing debt for a definite period is a sufficient consideration to support the claim of an innocent purchaser or lienholder.

■ G. R. White's testimony shows the land was purchased for and paid for by the partnership and testifies to other circumstances supporting the theory that he and Tom held the land in trust for the partnership. If this were all the evidence upon the issue we would hold, as we held in White v. Hix, 104 S.W.(2d) 136 this day decided, that it was insufficient to conclusively establish the parol trust and equitable title of the partnership. But in this case the bank's deed of trust, upon its face, shows that Tom regarded and treated the lands as belonging to the partnership. This additional evidence in this case conclusively establishes the trust and equitable title of the partnership. Nor can the bank claim ·to be an innocent lienholder because the instrument ·under which it claims so clearly implies the land belonged to the partnership.

The question then arises as to the right of a partner to incumber his interest in land ·belonging to a partnership to secure his individual indebtedness.

■ That a partner has such right is not an open question in this state when the partnership at the time is solvent; the incumbrance is not in fraud of creditors of the partnership and the other partners' assent thereto.

In Swearingen & Garrett v. Bassett, 65 Tex. 267, Justice Robertson said:

"Whilst the firm was solvent, his equitable was equal to his legal estate, and he had the right to sell his moiety, or to encumber it for his individual debts and purposes, and neither his partner nor the firm ·creditors, either at law or equity, could· complain or prevent the passage of full title to his vendee. Parsons on Part., star p. 377; Lindley on Part., 652, and notes; Treadwell v. Williams, 9 Bosw. [22 N.Y. Super.Ct.] 649; Hardy v. Mitchell, 67 Ind. 485; [Schmidlapp & Bros. v. S. D. Currie & Co.] 55 Miss. 597 [30 Am.Rep. ˙530]; [Reeves, Stevens & Co. v. Ayers] 38 Ill. 418; [Menagh v. Whitwell] 52 N.Y. 146 [11 Am.Rep. 683].

"Whilst the firm was solvent, he thus had the right to withdraw his interest in the lot from the partnership assets, and appropriate it to his own use. And we think, by the use he made of the lot by the consent of his partner, he did segregate it from the partnership property, and make it a part of his constitutional home, if, at any time after the adoption of the constitution of 1876, the firm of Bassett & Bassett was solvent. His interest was free when the firm was solvent, and his use of that interest deprived him, his creditors and his partner, all, of the power thereafter to impose upon it any lien, except for purchase money or improvements. Inge v. Cain [65 Tex. 75] Tyler Term, 1885."

In Stansell v. Fleming, 81 Tex. 294, 16 S.W. 1033, 1035, Chief Justice Stayton said: "That partners, by agreement between themselves, and without reference to˙ the wishes of firm creditors, may convert partnership property into the separate property of one partner, is well settled, and, when this is done, the right of the partner to have the property subjected to the payment of firm debts, as it before existed, ceases, and with the cessation of his right goes every right in the nature of lien the firm creditor through him had. White v. Parish, 20 Tex. [688] 689 [73 Am.Dec. 204]; Rogers v. Nichols, 20 Tex. 719; Weaver v. Ashcroft, 50 Tex. 427; Swearingen v. Bassett, 65 Tex. [267] 272; Kendall v. Hackworth, 66 Tex. 499 [18 S.W. 104]; Lindl. Partn. *pp. 334, 689, and cases cited in notes." See, also, Wiggins v. Blackshear, 86 Tex. 665, 26 S.W. 939, later quoted.

■ It was competent for the Whites to ratify the action of Tom in giving the bank its deed of trust, and it was not necessary to evidence such assent in writing. Frost v. Wolf, 77 Tex. 455, 461, 14 S.W. 440, 19 Am.St.Rep. 761.

White admitted that a few days before May 31, 1932, he knew Tom had given the bank its deed of trust (in this connection see letter of April 2, 1932 by Tom to White quoted in opinion this day handed down in White v. Hix) and never said anything to the bank about it.

■ Under the circumstances it was White's duty to promptly notify the bank,.

if he did not assent to Tom's action, and not wait until Tom's lips had been sealed by death before he repudiated same to the bank. Under the circumstances, the trial court was warranted in finding White did assent to and ratify Tom's action. 47 C.J. Partnership, § 378; 2 C.J. Agency, § 124; Luck v. Hopkins (Tex.Civ.App.) 54 S.W. 429; Williams v. Meyer (Tex.Civ.App.) 64 S.W. 66; Casey v. Carver, 42 Ill. 225.

In the absence of findings it must be assumed by this court that the trial court found all controverted issues of fact in such manner as will support the judgment. This court, therefore, assumes the trial court found the Whites acquiesced in and assented to the action of Tom in giving the bank's deed of trust.

In Wiggins v. Blackshear, 86 Tex. 665, 26 S.W. 939, 940, Judge Stayton said:

"As every partner is liable for the debts of his firm, and owns its property in common with other partners, it is his right to have the common property applied to the payment of partnership debts, and all the other partners, without his consent, cannot take this right from him.

"This right is sometimes said to give every partner an equitable lien on firm assets, as well to secure him against several liability for firm debts as to secure him his proper share of the firm assets on dissolution; but creditors of a partnership have no lien or other claim on partnership assets which can prevent the members of the firm from disposing of those in any manner or to whomsoever they may deem proper, provided that such disposition is not fraudulent.

"That a partnership creditor has no specific lien, either legal or equitable, upon partnership assets, any more than any individual creditor has upon the estate of his debtor, is so firmly established that citation of authority in support of the proposition is useless; but they may acquire liens by contract, or through the process of a court by which the creditors may acquire liens on specific property.

"The rule is thus well stated: 'A creditor of a partnership has, as a general rule, no direct lien upon the partnership property until he acquires it by legal process, that is, by the levy of an attachment or of an execution. His indirect or quasi lien is derived from the lien or equity of the individual partners. It is practically a subrogation to the lien of the individual partners. If the partners are not themselves in a condition to enforce an equitable lien upon the partnership property, the creditors of the partnership cannot enforce a lien derived from them or from one of them. The equity of the partnership creditor continues so long as the equity of the individual partner continues, and no longer.' Jones, Liens, 788.
* * *

"In accordance with the general rule before stated, it has been steadily held that one partner may in good faith convey his interest in partnership assets to another, and that thereby all equities of such partner and of all partnership creditors to subject such assets first to the payment of their claims is thereby lost. White v. Parish, 20 Tex. [688] 689 [73 Am.Dec. 204]; Rogers v. Nichols, 20 Tex. 719; Weaver v. Ashcroft, 50 Tex. [427] 442; Swearingen v. Bassett, 65 Tex. [267] 272; Stansell v. Fleming, 81 Tex. [294] 298, 16 S.W. 1033.

"It has been held that one member of an insolvent partnership, all the members being insolvent, may transfer in good faith, with the concurrence of the other partners, his interest in the partnership property to an individual creditor, and that, after this, a simple contract creditor cannot maintain a bill to subject the property to payment of a debt due to him by the firm. Case v. Beauregard, 99 U.S. 119 [25 L.Ed. 370].
* * *

"As partnership creditors had no lien on firm property no reason is perceived why each member might not lawfully permit the other to pay his individual debt out of his own share of the partnership property; and the same reasons which would make lawful such a payment would give validity to a mortgage given by both partners to secure debts of members of the firm.

"Conveyances or mortgages given under such circumstances and for such purposes are not voluntary and therefore fraudulent as to partnership creditors."

See, also, Luck v. Hopkins (Tex.Civ. App.) 54 S.W. 429; Williams v. Meyer (Tex.Civ.App.) 64 S.W. 66.

The Whites having assented to the action of Tom, it is immaterial so far as they, in their individual capacities are concerned, if the partnership was insolvent at the time.

The Loan Company was then a simple contract creditor, and under the above authorities the giving of the lien by Tom to the bank was not in fraud of the rights of partnership creditors, and the Whites having assented thereto, the lien

given the bank was superior to the rights of partnership creditors.

. Certainly it is superior if the partnership was solvent at the time the lien was given the bank.

On cross-examination G. R. White testified:

"Q. You don't think it was solvent after '28. A. I doubt it.

"Q. You knew as much about it as you know now, don't you? A. Yes, but there is an argument whether the values started to strengthening after '28.

"Q. Was it solvent in '29? A. I doubt it.

"Q. Was it solvent in '30? A. I doubt it.

"Q. Was it solvent in '31? A. I doubt it.

"Q. In '32? A. I doubt it.

"Q. '33. A. No, it wasn't solvent then.

"Q. That is the first time you knew it wasn't solvent was in '33? A. I know it now. I didn't know it then, but there is no doubt, the way things have turned out, it wasn't solvent in '33.

"Q. 1933 is the first you knew that it wasn't solvent? A. I said I doubt it. I know it wasn't solvent in '33. * * *

"Q. In '30 it was solvent, wasn't it? A. I doubt it. * * *

"Q. Did you make a statement November 1, 1930 of White & Tom? A. Yes.

"Q. And showed the net worth was $195,220.92? A. Yes."

This testimony alone sustains the implied finding of the trial court that the partnership was solvent on November 1, 1931.

Other evidence strengthens this finding, to which we now refer.

At all times subsequent to 1925 the Loan Company had a demand in excess of $200,-000, which appellants assume was a liability of the partnership.

G. R. White testified:

"Q. You say on November 1, 1931, you owed the Stock Yards Loan Company $247,758.14? A. Yes.

"Q. Was that in the form of a note? A. Yes.

"Q. Who signed that note? A. We changed them around. I don't remember who signed that particular one.

"Q. What do you mean by 'changed them around'? A. Sometimes C. T. White and sometimes J. E. White and then some-times G. R. White would sign them, whichever was in the best shape at the time.

"Q. It was an individual note? A. No, partnership note; signed individually, but the partnership owed it.

"Q. It wasn't signed by the partnership? A. No. * * *

"Q. When was the first note, partnership note, executed to the Stock Yards Loan Company? A. I don't remember the date, but it was before Mr. Tom died—the first one I know of.

"Q. Who signed that? A. White & Tom, by G. R. White.

"Q. Did you sign it individually? A. No, sir.

"Q. You remember about the date? A. The way I remember it, it was three or four months before he died."

 Under the Negotiable Instruments Act no person is liable on a negotiable note whose signature does not appear thereon, though one who signs in a trade or assumed name is liable thereon to the same extent as if he had signed in his own name. Article 5932, § 18, R.S.; Bolan v. Wrather (Tex.Civ.App.) 239 S.W. 279; Jenkins v. Parkersburg R. & R. Co. (Tex.Civ.App.) 78 S.W.(2d) 694, and cases there cited.

This provision of the act is but a restatement of the common-law merchant. Texas L. & C. Co. v. Carroll, 63 Tex. 48, and other authorities cited in Bolan v. Wrather, supra.

 It thus appears that not until a short time before Tom's death in 1934 did the Loan Company have notes signed by the partnership. The partnership was not liable on the notes the company theretofore held.

It may be the partnership could have been held liable on the original transactions out of which the indebtedness arose (Wood v. Key [Tex.Civ.App.] 256 S.W. 314), but any causes of action upon the original transactions were probably in many instances then barred by limitation. The record is insufficient to show enforceable demands in favor of the Loan Company against the partnership existing on November 1, 1931, and arising out of the original transactions. The same is true with reference to the $13,000 unpaid on the individual notes of G. R. White and G. W. Tom for the Mulky land. Any cause of action against the partnership in favor of Mulky out of the original sale was barred by limitation on November 1, 1931.

■ Other items which appellants would have considered as liabilities of the partnership are claims, described in their pleadings, of various parties which by said parties are asserted to be liabilities of the partnership. But appellants deny such claims are partnership liabilities, and under such circumstances they have no right to assume the contrary upon the issue of solvency.

■ Upon the issue, the evidence shows the partnership was solvent on November 1, 1931. In any event, it is sufficient to support such a finding.

For the reasons stated we hold the bank's lien to be superior to the rights of the Whites and the Loan Company.

■ Appellants' second proposition relates to the cross-action of the Whites against the bank.

The cross-action was filed March 2, 1936, and set up that in the years 1930–31–32 and '33, Tom and the bank misappropriated funds in the checking account of White & Tom to the payment of individual indebtedness of Tom to the bank. The items in question were represented by White & Tom checks against the partnership account. Tom was the managing partner. He had the right to draw against the partnership account, and in fact drew all the partnership checks which were drawn against the same. He had complete control of the account. He had the right to withdraw the funds and the bank had no right to question his authority to do so. Nor in the absence of bad faith had the bank any right to question Tom's authority to dispose of withdrawals as he saw fit. The bank had the right to assume he was accounting to the partnership for withdrawals for his own personal use. The bank incurred no liability in the matter. 32 Tex.Jur. p. 330, § 72; Amarillo Nat. Bank v. Harrell (Tex. Civ.App.) 159 S.W. 858; Bruni v. Garza (Tex.Civ.App.) 26 S.W. 108.

■ But if liability arose, the cause of action is barred by the two years' statute of limitations.

There was no concealment which would toll the operation of the statute. Statements were rendered and mailed monthly with the cancelled checks. If the Whites did not discover the misapplication by Tom until after his death, it was their own fault. They exercised no care or supervision whatever over the account. G. R. White's testimony so shows.

Affirmed.

## On Motion for Rehearing.

In their motion for rehearing appellants say the plaintiff did not plead that the Whites assented to and ratified the action of Tom in giving the deed of trust to the bank.

We quote from the plaintiff's supplemental petition at pages 113 and 114, of the transcript, as follows: "That the defendants, and each and all of them, not only had actual notice and knowledge of the taking of said deed of trust by this plaintiff, but were charged with notice thereof by virtue of, and from the time said deed of trust was so filed for record. That with said full knowledge, the defendants, and each and all of them, approved of the giving of said deed of trust to plaintiff, and its acceptance thereof."

The motion for rehearing is overruled.